## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DAVID SETH WORMAN,** | |
| and | |
| **ANTHONY LINDEN,** | CIVIL ACTION |
| and | No. 1:17-cv-10107 |
| **JASON WILLIAM SAWYER,** | |
| and | |
| **NICHOLAS ANDREW FELD** | |
| and | |
| **PAUL NELSON CHAMBERLAIN** | |
| and | |
| **GUN OWNERS' ACTION LEAGUE, INC.,** | |
| and | |
| **ON TARGET TRAINING, INC.,** | |
| and | |
| **OVERWATCH OUTPOST,** | |
|           **Plaintiffs,** | |
|    v. | |
| **CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,** | |
| and | |

**MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts,**

and

**DANIEL BENNETT, in his official capacity as the Secretary of the Executive Office of Public Safety and Security,**

and

**COLONEL RICHARD D. MCKEON, in his official capacity as Superintendent of the Massachusetts State Police,**

and

**MASSACHUSETTS STATE POLICE,**

                    **Defendants**.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, David Seth Worman, Anthony Linden, Jason William Sawyer, Nicholas Andrew Feld, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost (collectively "Plaintiffs"), by and through their attorneys, file their complaint against Charles Baker, in his official capacity as Governor of the Commonwealth of Massachusetts; Maura Healey, in her official capacity as Attorney General of the Commonwealth of Massachusetts; Daniel Bennett, in his official capacity as the Secretary of the Executive Office of Public Safety and Security; Colonel Richard McKeon, in his official capacity as Superintendent of the Massachusetts State

2

Police; and Massachusetts State Police (collectively, "Defendants"), and state the following.

## INTRODUCTION

1.     The Second Amendment enshrines "the right of the people to keep and bear arms" and declares that it "shall not be infringed." U.S. CONST. amend. II. The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (applying the Second Amendment to the States through the Due Process clause of the Fourteenth Amendment). The Second Amendment protects "arms" that are "in common use . . . for lawful purposes like self-defense." *Heller*, 554 U.S. at 624.

2.     Massachusetts prohibits firearms it pejoratively defines as "assault weapons," which is a non-technical, entirely fabricated, and political term of uncertain definition and scope.[1] Included within the prohibition are certain specifically identified long guns, including AR-15 and AK-47 models, which are by far the most popular rifles in the country, and many other popular firearms, as well as their "copies or duplicates" (collectively, "Banned Firearms"). The phrase "copies or duplicates" is not defined in Massachusetts law or by any court's decision and is susceptible to many different interpretations. Since 1998, however, many firearms that are similar to the enumerated

---

[1] "'Prior to 1989, the term "assault weapon" did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of "assault rifles" so as to allow an attack on as many additional firearms as possible on the basis of undefined "evil" appearance.'" *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (quoting Kobayashi & Olson, *In Re 101 California Street: A Legal and Economic Analysis of Strict Liability For The Manufacture And Sale Of "Assault Weapons,"* 8 Stan. L. & Pol'y Rev. 41, 43 (1997)).

Banned Firearms have been sold and transferred with the explicit consent and approval of Defendants—without being considered "copies or duplicates." These similar firearms became known as "Massachusetts Compliant Firearms."

3.      Defendant Healey issued a so-called "Notice of Enforcement," dated July 20, 2016 (the "Notice of Enforcement"), that purported to define the phrase "copies or duplicates" in a way unprecedented in the history of firearms regulations and vastly expanded Massachusetts' prohibition to ban an entire class of popular firearms commonly kept for lawful purposes, including those known as Massachusetts Compliant Firearms.

4.      The Notice of Enforcement retroactively criminalizes the transfers of tens of thousands of Massachusetts Compliant Firearms that Defendants or their predecessors had approved as lawful transfers at the time such transfers occurred. Despite Defendants' prior approvals, Defendant Healey unilaterally decreed that thousands of Massachusetts residents are suddenly criminals simply for having exercised their Second Amendment rights.

5.      The convoluted tests for determining if a firearm is a "copy or duplicate" set forth in the Notice of Enforcement do not cure the vagueness inherent in the statutory phrase "copies or duplicates," as described in more detail below, because they do not put a citizen of average intelligence on notice of what conduct is prohibited. The tests require a citizen to know the inner workings of every Enumerated Banned Firearm listed by model in the General Laws of Massachusetts as well as the inner workings of every

questionable firearm to determine if they are interchangeable. This is undoubtedly beyond the ken of the average citizen. Moreover, in addition to the two tests set forth in the Notice of Enforcement, other factors such as the marketing of a particular firearm are "relevant" to determining if that firearm is a "copy or duplicate." No information is provided regarding what it means to be "relevant." These serious deficiencies prevent citizens from being able to understand the phrase "copies or duplicates," in violation of the Due Process clause of the Fourteenth Amendment.

6.      The Notice of Enforcement upends decades of settled custom and practice in Massachusetts, retroactively criminalizes decades of legal behavior and transactions, and broadens a ban on a class of constitutionally protected firearms that cannot pass any level of constitutional scrutiny under the Second Amendment.

7.      Massachusetts also prohibits the acquisition and possession of standard magazines with a capacity of greater than ten rounds ("Banned Magazines"). This prohibition prevents law-abiding, responsible citizens such as Plaintiffs from acquiring and possessing standard capacity magazines for their firearms, which unconstitutionally restricts Plaintiffs' ability to defend themselves in their homes.

8.      Desiring to acquire these constitutionally protected firearms and magazines, but credibly fearing prosecution, Plaintiffs bring this suit to protect their rights under both the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs seek (i) to protect their Second Amendment right to acquire and possess constitutionally protected firearms and magazines, (ii) to prevent Defendants from enforcing the Notice

of Enforcement retroactively to transactions that were legal at the time they occurred, and (iii) to prevent Defendants from enforcing an unconstitutionally vague law.

9.     Plaintiffs respectfully request that this Court (i) declare that Mass. Gen. Laws ch. 140, §§ 121, 131M (collectively, "Challenged Laws") and the Notice of Enforcement infringe Plaintiffs' constitutional rights and cannot be enforced and (ii) enjoin Defendants preliminarily and permanently from enforcing Massachusetts' prohibition of constitutionally protected firearms and magazines.

## PARTIES

10.     Plaintiff David Worman is a resident of Massachusetts and a citizen of the United States. Plaintiff Worman currently owns a firearm that was lawfully sold to him in Massachusetts after the enactment of the Challenged Laws but before Defendant Healey issued the Notice of Enforcement. Plaintiff Worman's firearm may be prohibited under the Notice of Enforcement as described further below.

11.     Plaintiff Anthony Linden is a resident of Massachusetts and a citizen of the United States. Plaintiff Linden currently owns a firearm that was lawfully sold to him in Massachusetts after the enactment of the Challenged Laws but before Defendant Healey issued the Notice of Enforcement. Plaintiff Linden's firearm may be prohibited under the Notice of Enforcement as described further below.

12.     Plaintiff Jason Sawyer is a resident of Massachusetts and a citizen of the United States. Plaintiff Sawyer currently owns a firearm that was lawfully sold to him in Massachusetts after the enactment of the Challenged Laws but before Defendant Healey

issued the Notice of Enforcement. Plaintiff Sawyer's firearm may be prohibited under the Notice of Enforcement as described further below.

13.    Plaintiff Nicholas Feld is a resident of Massachusetts and a citizen of the United States. Plaintiff Feld wishes to purchase firearms and magazines that are banned and would do so but for the prohibition. Plaintiff Feld would keep these firearms and magazines in the home for self-defense and other lawful purposes.

14.    Plaintiff Paul Chamberlain is a resident of Massachusetts and a citizen of the United States. Plaintiff Chamberlain wishes to purchase firearms and magazines that are banned and would do so but for the prohibition. Plaintiff Chamberlain would keep these firearms and magazines in the home for self-defense and other lawful purposes.

15.    Each individual Plaintiff is otherwise eligible under the laws of the United States and the Commonwealth of Massachusetts to receive and possess firearms and magazines, including the Banned Firearms and Magazines. Each individual Plaintiff intends to and, but for the credible threat of prosecution under the Challenged Laws, would purchase the Banned Firearms and Magazines to keep in their homes for self-defense and other lawful purposes.

16.    Plaintiff Gun Owners' Action League, Inc. ("GOAL"), a nonprofit corporation, is an organization dedicated to promoting safe and responsible firearms ownership, marksmanship competition, and hunter safety throughout Massachusetts. GOAL advocates on behalf of its individual members. Its individual members include both individual firearm owners as well as firearm and marksmanship clubs. Its individual

members would purchase the constitutionally protected firearms and magazines prohibited by Massachusetts but for the credible threat of prosecution under the Challenged Laws. Furthermore, members of GOAL currently own firearms, which were lawfully sold to them in Massachusetts, after the enactment of the Challenged Laws but before Defendant Healey issued the Notice of Enforcement, that are prohibited under the Notice of Enforcement.

17.     GOAL brings suit on its own behalf and on behalf of its members.

18.     Plaintiff On Target Training, Inc. ("On Target"), a domestic profit corporation, is a Massachusetts entity with a principal place of business in Massachusetts. On Target possesses a valid federal firearms license, which permits it to buy, sell, import, and manufacture firearms, magazines and ammunition within Massachusetts. Until the effective date of the Challenged Laws, On Target sold the Banned Firearms and Magazines. On Target intends to and, but for the credible threat of prosecution under the Challenged Laws, would continue to sell these constitutionally protected firearms and magazines. Additionally, until the effective date of the Notice of Enforcement, On Target lawfully sold Massachusetts Compliant Firearms that are banned under the tests set forth in the Notice of Enforcement. On Target suffers ongoing economic harm because it can no longer sell these constitutionally protected firearms and magazines. On Target suffers further harm because of the vagueness of the Notice of Enforcement, which prevents it from knowing what firearms it can lawfully sell.

19.     Plaintiff Overwatch Outpost ("Overwatch"), a sole proprietorship, is a Massachusetts entity with a principal place of business in Massachusetts. Overwatch possesses a valid federal firearms license, which permits it to buy, sell, import, and manufacture firearms, magazines and ammunition within Massachusetts. Until the effective date of the Challenged Laws, Overwatch sold the Banned Firearms and Magazines. Overwatch intends to and, but for the credible threat of prosecution under the Challenged Laws, would continue to sell these constitutionally protected firearms and magazines. Additionally, until the effective date of the Notice of Enforcement, Overwatch lawfully sold Massachusetts Compliant Firearms that are banned under the tests set forth in the Notice of Enforcement. Overwatch suffers ongoing economic harm because it can no longer sell these constitutionally protected firearms and magazines. Overwatch suffers further harm because of the vagueness of the Notice of Enforcement, which prevents it from knowing what firearms it can lawfully sell.

20.     On Target and Overwatch are suffering a significant loss of income by virtue of Defendants' enforcement of the Challenged Laws. They can and do represent the interests of their customers and potential customers in exercising their Second Amendment rights by acquiring the Banned Firearms and Magazines. Furthermore, they are under a credible threat of prosecution and loss of license for violations of the Challenged Laws as currently being enforced pursuant to the Notice of Enforcement.

21.     Defendant Charles D. Baker, Jr., is the Governor of the Commonwealth of Massachusetts. As Governor, Defendant Baker serves as the "supreme executive

magistrate" of the government of Massachusetts and is ultimately responsible for the enforcement of the laws of Massachusetts including the challenged prohibition. MASS. CONST. ch. II, § 1.

22.     Defendant Maura Healey is the Attorney General of the Commonwealth of Massachusetts. As Attorney General, Defendant Healey is the executive and administrative officer in charge of supervising the Office of the Attorney General and is the chief lawyer and law enforcement officer in Massachusetts with authority to prosecute violators of the law, including the challenged laws, on behalf of Massachusetts. *See* MASS. GEN. LAWS ch. 12, § 3.

23.     Defendant Daniel Bennett is the Secretary of the Executive Office of Public Safety and Security. As Secretary, Defendant Bennett is responsible for overseeing the operations of the Executive Office of Public Safety and Security, including the Firearms Records Bureau, which maintains records of all firearm transfers in Massachusetts.

24.     Defendant Col. Richard D. McKeon is the Superintendent of the Massachusetts State Police. As Superintendent of the Massachusetts State Police, Defendant McKeon is responsible for enforcing the challenged laws and for overseeing the operations of Defendant Massachusetts State Police.

25.     Defendant Massachusetts State Police is the state-wide law enforcement agency responsible for enforcing the laws of Massachusetts, including the challenged laws.

26.     All individual Defendants are being sued in their official capacities only.

## JURISDICTION

27.     Jurisdiction is founded on 28 U.S.C. § 1331 because this action arises under the Constitution of the United States, and under 28 U.S.C. § 1343(3) because this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the Commonwealth of Massachusetts, of rights, privileges, or immunities secured by the United States Constitution.

28.     This action for a violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks a declaratory judgment and injunctive relief under to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees under to 42 U.S.C. § 1988.

29.     Venue lies in this District under to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' causes of action arose in the district in which this action is brought.

## FACTS

### The Banned Firearms and Magazines Are Constitutionally Protected

30.     The Banned Firearms are commonly kept in the home by law-abiding, responsible citizens for lawful purposes, including self-defense.

31.     With one exception, the Banned Firearms are all semi-automatic,[2] meaning that they fire only once with each pull of the trigger, no matter how long the trigger is held. Semi-automatic firearms have been in use by the civilian population for over a

---

[2] The statutory language of the ban ("Avtomat Kalashnikovs (AK) (all models)") would include fully automatic versions of "AK" firearms. Fully automatic firearms are regulated under federal law, and Plaintiffs do not challenge Massachusetts' prohibition of fully automatic "AK" rifles.

century, and there is no evidence demonstrating a historical prohibition on their ownership.

32.     The Banned Firearms include the most popular rifles sold today: AR- and AK-platform rifles. Between 1990 and 2014, more than 11 million rifles based on these platforms were manufactured or imported into the United States. In 2014 alone, approximately 1,228,000 firearms based on these platforms were manufactured or sold in the United States. In 2012 alone, the Banned Firearms accounted for twenty percent of all retail firearm sales. The Banned Firearms are the most popular rifles sold in America today and have been for some time.

33.     Purchasers consistently report that one of the most important reasons for their purchase of a Banned Firearm is self-defense. The Bureau of Alcohol, Tobacco, and Firearms confirmed over twenty-five years ago that the Banned Firearms are useful in self-defense.

34.     There are significant reasons that an individual would choose a Banned Firearm for self-defense. Handguns are significantly less accurate than long guns, are more difficult to steady, and absorb less recoil than long guns. These factors combine to make handguns substantially more difficult to fire accurately, especially when under stress.

35.     Other lawful purposes for which the Banned Firearms are purchased include hunting, competitive shooting, and target shooting. As but one example, the

winner of the prestigious United States Civilian Marksmanship Program National Match has used an AR-platform rifle for the last quarter of a century.

36.     The United States Supreme Court has recognized that the Banned Firearms are traditionally considered lawful possessions. *Staples v. United States*, 511 U.S. 600, 612 (1994) (stating that AR-platform firearms are a class of firearms that "traditionally have been widely accepted as lawful possessions").

37.     Magazines having a capacity of more than ten rounds are commonly kept by law-abiding citizens for lawful purposes. They are kept for self-defense because self-defense situations are generally extremely stressful events, where changing magazines is near impossible. In fact, the desire to have more rounds of ammunition available without reloading has driven firearm design and development for centuries. The first commercially widespread firearms accepting detachable magazines with a capacity of more than ten rounds of ammunition became available at the turn of the 20th Century.

38.     Banned Magazines are provided as standard equipment for nearly all semi-automatic pistols and rifles sold in the United States. Because the Second Amendment protects the right to possess firearms that are equipped with detachable magazines, there is an attendant right to possess the detachable magazines necessary to render the firearm operable.

39.      There are approximately 105 million Banned Magazines in the United States as of 2014, and these magazines account for about fifty percent of all magazines in the nation.

**Massachusetts Prohibits "Assault Weapons" and "Large Capacity Feeding Devices"**

40. In 1998, Massachusetts enacted a law mirroring the 1994 federal prohibition of "assault weapons," and "large capacity feeding devices." Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. § 921(a)(30) ("Federal Ban") (repealed 2004). Massachusetts law defines the term "assault weapon" to "have the same meaning as a semiautomatic weapon as defined in the federal Public Safety and Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)(30) as appearing in such section on September 13, 1994 and shall include":

> any of the weapons, or copies or duplicates of the weapons, of any caliber, known as
>     i.    Avtomat Kalashnikov (AK) (all models);
>     ii.    Action Arms Israeli Military Industries UZI and Galil;
>     iii.    Beretta Ar70 (SC-70);
>     iv.    Colt AR-15;
>     v.    Fabrique National FN/FAL, FN/LAR, and FNC;
>     vi.    SWD M-10, M-11, M-11/9, and M-12;
>     vii.    Steyr AUG;
>     viii.    INTRATEC TEC-9, TEC-10, TEC-DC9, and TEC-22; and
>     ix.    Revolving cylinder shotguns, such as, or similar to, the Street Sweeper and Striker 12.

MASS. GEN. LAWS ch. 140 §121. Plaintiffs will refer to the firearms listed in subsections (i) through (ix) as "Enumerated Banned Firearms."

41. Because Massachusetts incorporates the Federal Ban's prohibitions, the Commonwealth also prohibits semi-automatic rifles that have the ability to accept a detachable magazine and at least two of the following features: (i) a folding or telescoping stock; (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon; (iii) a bayonet mount; (iv) a flash suppressor or threaded barrel designed to

accommodate a flash suppressor; and (v) a grenade launcher. 18 U.S.C. 921(a)(30) (1994).

42.     Massachusetts prohibits possession and transfer of Banned Firearms and Magazines and imposes severe penalties for any violation:

> No person shall sell, offer for sale, transfer or possess an assault weapon or a large capacity feeding device that was not otherwise lawfully possessed on September 13, 1994. Whoever not being licensed under the provisions of section 122 violates the provisions of this section shall be punished, for a first offense, by a fine of not less than $1,000 nor more than $10,000 or by imprisonment for not less than one year nor more than ten years, or by both such fine and imprisonment, and for a second offense, by a fine of not less than $5,000 nor more than $15,000 or by imprisonment for not less than five years nor more than 15 years, or by both such fine and imprisonment.

MASS. GEN. LAWS ch. 140 § 131M ("Firearm Prohibition Statute").

43.     The only statutory safe harbor to this prohibition of common, popular firearms and standard magazines is that "[t]he provisions of [the Firearm Prohibition Statute] shall not apply to: (i) the possession by a law enforcement officer; or (ii) the possession by an individual who is retired from service with a law enforcement agency and is not otherwise prohibited from receiving such a weapon or feeding device from such agency upon retirement." *Id.*

44.     The Federal Ban was repealed under its ten-year sunset provision on September 13, 2004. Despite studies uniformly showing that the Federal Ban failed to have an impact on violent crime rates or even the criminal use of the prohibited "assault weapons," Massachusetts nonetheless reaffirmed the Commonwealth's prohibition in 2004.

45.    The legislative history of the Federal Ban reveals that then-Director of the Bureau of Alcohol, Tobacco, and Firearms, John Magaw, explained that if Banned Firearms could be modified to remove certain features, such as a bayonet lug or a flash suppressor, such modification would remove them from the definition of "assault weapon," even as a "copy or duplicate" thereof. Director Magaw did not state that the phrase "copies or duplicates" referred to similar operating systems or interchangeability of components. 140 Cong. Rec. S4939-41 (May 2, 1994).

46.    As the Federal Ban was debated, Senator Joseph Biden of Delaware made clear that the term "copy" did not refer to the firearm's operating system: "To avoid the so-called copycat problem – where manufacturers simply rename guns to avoid State assault weapon legislation – the amendment makes clear that replicas and duplicates of the listed firearms are covered as well." 139 Cong. Rec. S15459. "Senator Biden stated further that 'to make clear that this ban applies only to military style assault weapons, this ban would apply only to semiautomatic rifles and pistols that can accept detachable magazines that have at least two of the following characteristics: A grenade launcher; a flash suppressor; a bayonet mount; a folding stock; or a pistol grip.'" *Id.*

### Massachusetts Interpreted the Definition Statute from 1998 until July 20, 2016 to Permit the Transfer of Massachusetts Compliant Firearms

47.    After enactment of the Challenged Laws, Defendants approved the sale of semi-automatic firearms designed to be compliant with these statutes, which are known as Massachusetts Compliant Firearms.

48.     Massachusetts Compliant Firearms were offered for sale and sold by firearms dealers, including On Target and Overwatch, from 1998 until July 20, 2016.

49.     Massachusetts Compliant Firearms were sold to Massachusetts residents, including Plaintiffs Sawyer, Worman, and Linden, between 1998 and July 20, 2016, which includes more than a year of Defendant Healey's term as Attorney General, without any action being taken by Defendants or any law enforcement agency to halt their sales.

50.     Defendants and other agents of Massachusetts approved the sale of Massachusetts Compliant Firearms by processing transfer applications.

51.     Under Massachusetts law, records of all firearm transfers (including a description of the firearm; its make, model, and serial number; the type of firearm; the date of sale; and the license number of the individual to whom it was transferred) must be maintained by all sellers, including On Target and Overwatch. Defendants, or their agents, are required to inspect these records for violations of Massachusetts law each year. MASS. GEN. LAWS ch. 140 § 123 ("The licensing authority shall enter . . . and inspect, in a reasonable manner, such records and inventory.").

52.     Tens of thousands of Massachusetts Compliant Firearms were transferred each year between 1998 and July 20, 2016.

53.     Defendants never notified On Target, Overwatch, or any other firearms dealer, that transfers of Massachusetts Compliant Firearms were illegal, despite routinely

inspecting records that would have included the firearms' make, model, and serial number.

54.     The Firearms Records Bureau of the Department of Criminal Justice Information Services ("Bureau") "maintains a database which includes firearms licenses issued **and gun transactions reported to the Firearms Records Bureau** . . . after 1985." Firearms Records Bureau, Request for Personal Firearms License and/or Sale/Rental/Lease Data, http://www.mass.gov/eopss/docs/chsb/firearms/personal-search-request.pdf [https://perma.cc/R6ET-2XNX] (last visited January 10, 2017) (emphasis added). The form available from the Bureau makes clear that it has information on the makes and models of all firearms sold in Massachusetts. *See id.* (revealing that a search of the database can be conducted for a specific firearm registration, sale, rental, lease, or other transaction by providing "at least one of . . . Make/Model").

55.     Defendants have been aware of transactions involving Massachusetts Compliant Firearms and have maintained records of these transactions.

56.     The volume of Massachusetts Compliant Firearms sold combined with the inspection requirement demonstrate that Defendants knew that Massachusetts Compliant Firearms were being sold, yet Defendants took no action for a nearly twenty-year period to halt transactions involving these firearms. While annual reviews did not lead to any action for almost two decades, Defendant Healey asserts that a 2016 review prompted sudden action and issuance of the Notice of Enforcement with no explanation for this unprecedented and arbitrary change in enforcement of the pre-existing law.

57.     By processing the transfer applications for Massachusetts Compliant Firearms for almost twenty years, Defendants established that Massachusetts Compliant Firearms were legal under the Challenged Laws and defined the scope of the phrase "copies or duplicates" to exclude Massachusetts Compliant Firearms.

## Defendant Healey's Notice of Enforcement Significantly Broadened the Definition of "Copies or Duplicates"

58.     On July 20, 2016, Defendant Healey, in her official capacity as Attorney General, issued the Notice of Enforcement, which purported to "provide[] guidance on the identification of weapons that are 'copies' or 'duplicates' of the [Enumerated Banned Firearms] that are banned under Massachusetts law." This guidance broadly expands the statutory definition far beyond what had been for almost twenty years the settled custom and practice. Defendant Healey promoted this sweeping change in the law by writing an op-ed in the July 20, 2016 edition of the Boston Globe.

59.     The Notice of Enforcement declares that a firearm is a "copy or duplicate" of an Enumerated Banned Firearm if

i.      "its internal functional components are substantially similar in construction and configuration to those of an [Enumerated Banned Firearm]. Under this test, a weapon is a Copy or Duplicate, for example, if the operating system and firing mechanism of the weapon are based on or otherwise substantially similar to one of the [Enumerated Banned Firearm]"; or

ii.     "it has a receiver that is the same as or interchangeable with the receiver of an [Enumerated Banned Firearm]. A receiver will be treated as the same as or interchangeable with the receiver on an [Enumerated Banned Firearm] if it includes or accepts two or more operating components that are the same as or interchangeable with those of an [Enumerated Banned Firearm]. Such operating components may include, but are not limited to: 1) the trigger assembly; 2) the bolt carrier or bolt carrier

group; 3) the charging handle; 4) the extractor or extractor assembly; or 5) the magazine port."

60.     The Notice of Enforcement also declares that, "[t]he fact that a weapon is or has been marketed by the manufacturer on the basis that it is the same as or substantially similar to one or more [Enumerated Banned Firearms] will be relevant to identifying whether the weapon is a Copy or Duplicate (and therefore a prohibited Assault weapon) under the applicable test(s)." The Notice of Enforcement provides no explanation of what it means to be "relevant" or how this fits into the tests listed in the Notice of Enforcement, both of which focus on mechanical aspects of the firearms. Furthermore, the Notice of Enforcement fails to explain how the marketing choices, or other statements, of third parties can have any effect on the substantive application of the law.

61.     Defendant Healey's broad and ambiguous interpretation of the phrase "copies or duplicates" finds no basis in the federal law on which that statutory language is based, the Massachusetts law that it purports to interpret and enforce, or any other law. Rather, it is an unprecedented and arbitrary interpretation of that phrase.

62.     The Notice of Enforcement provides two clauses purporting to limit its scope: one for dealers and one for individual firearm owners.

63.     For "dealers licensed under G.L. c. 140, § 122," the Notice of Enforcement provides only prospective limitation: "The Guidance will not be applied to future possession, ownership or transfer of Assault weapons by dealers, provided that the dealer has written evidence that the weapons were transferred to the dealer in the

Commonwealth prior to July 20, 2016, and provided further that a transfer made after July 20, 2016, if any, is made to persons or businesses in states where such weapons are legal."

64.     The Notice of Enforcement provides no exception to its application to dealers for transfers made before July 20, 2016.

65.     For "individual gun owners," the Notice of Enforcement provides both retroactive and prospective limitation: "The Guidance will not be applied to possession, ownership or transfer of an Assault weapon obtained prior to July 20, 2016."

66.     The Notice of Enforcement also explicitly states that "[t]he [Attorney General's Office] reserves the right to alter or amend this guidance" leaving Plaintiffs in an untenable position where they cannot know the scope of the law being applied to them, or its possible legal repercussions. There is nothing in the Challenged Laws that would allow for any safe harbor as set forth in the Notice of Enforcement.

## The Notice of Enforcement Retroactively Criminalizes All Prior Transfers of Massachusetts Compliant Firearms, Exposing Plaintiffs to Criminal Penalties

67.     The Notice of Enforcement alters the meaning of the phrase "copies or duplicates" as that phrase was understood by Plaintiffs, the public, and the firearms industry by virtue of Defendants' conduct in approving sales of Massachusetts Compliant Firearms for almost twenty years. The impact of the Notice of Enforcement was to declare that the dealers had conducted tens of thousands of transactions that were illegal under Massachusetts law at the time they were made.

21

68.     The Notice of Enforcement was not a prospective-only interpretation of the law. Defendant Healey has made this clear by refusing to state that transfers that occurred in the past were legal at the time they occurred. Instead, she stated that "[t]he Guidance will not be applied to future possession, ownership or transfer of Assault weapons by dealers, provided that the dealer has written evidence that the weapons were transferred to the dealer in the Commonwealth prior to July 20, 2016, and provided further that a transfer made after July 20, 2016, if any, is made to persons or businesses in states where such weapons are legal." Notice of Enforcement at 4.

69.     Because it is not prospective-only, the Notice of Enforcement has the impact of declaring prior transfers of Massachusetts Compliant Firearms to have been unlawful under the Challenged Laws.

70.     Under 18 U.S.C. 922(b)(2), it is illegal for any licensed dealer to sell or deliver "any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance." Thus, by executive fiat and without authority to do so, the Attorney General has issued an interpretation that not only changes the scope of the law as understood by Plaintiffs, the public, and the firearms industry, and as enforced by Defendants, it also retroactively exposes licensees, including Plaintiffs, to criminal penalty.

71.     Furthermore, by expressly stating that the Office of the Attorney General has the authority to modify the Notice of Enforcement, the Notice of Enforcement exposes individual Plaintiffs and other possessors of Massachusetts Compliant Firearms to criminal penalties for exercising their Second Amendment rights. This admonishment by the Attorney General is intended to, and has the effect of, chilling the exercise of Second Amendment rights.

## CAUSES OF ACTION
### Count I
**(The Firearm Prohibition Statute Violates the Second Amendment)**

72.     The preceding paragraphs are re-alleged and incorporated by reference.

73.     The United States Supreme Court held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" was unconstitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628. The "arms" protected by the Second Amendment are those in current use today. *See, e.g., Caetano v. Massachusetts*, 136 S. Ct. 1027, 1027-28 (2016) (rejecting the Supreme Judicial Court of Massachusetts' reasoning that stun guns were not protected by the Second Amendment because they are a modern invention and affirming that courts must look to common usage in current times to determine if an "arm" is protected by the Second Amendment).

74.     The Firearm Prohibition Statute prohibits an entire class of firearms that are of the kind in common use at the present time, including AR- and AK-platform rifles, by far the most popular rifles commonly kept by law-abiding, responsible citizens for lawful

purposes. It also prohibits magazines that are of the kind in common use at the present time.

75.     The prohibition of these commonly kept firearms and magazines extends to every instance in which they might be preferable to other firearms, including defense of self in the home, hunting, recreational shooting, or competitive marksmanship events.

76.     Between the Definition Statute's inclusion of the Enumerated Banned Firearms, their "copies or duplicates," and the firearms considered "assault weapons" by virtue of their features, Massachusetts effectively bans the acquisition of the most popular rifles in the nation. It also has banned standard capacity magazines sold with nearly all semi-automatic firearms across the nation. These prohibitions extend into the homes of law-abiding, responsible citizens, where the Second Amendment protections are at their zenith.

77.     The aforesaid prohibitions and restrictions on firearms and magazines that are commonly possessed throughout the United States by law-abiding, responsible citizens for lawful purposes infringe on the right of the people of Massachusetts, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment of the United States Constitution, and as made applicable to the Commonwealth of Massachusetts by the Fourteenth Amendment.

## Count II
### (The Notice of Enforcement Violates Due Process Because It Retroactively Criminalizes Lawful Conduct)

78.     The preceding paragraphs are re-alleged and incorporated by reference.

24

79.     Because of their immense popularity across the nation and in Massachusetts, tens of thousands of Massachusetts Compliant Firearms have been sold in Massachusetts each year since 1998. These transactions complied with all Massachusetts laws as demonstrated by the official government approval of each.

80.     The Notice of Enforcement "clarified" the scope of the statutory prohibition against possessing "assault weapons" to prohibit Massachusetts Compliant Firearms that had been sold in Massachusetts since 1998 in good faith compliance with the existing law.

81.     The Ex Post Facto clause of the United States Constitution prohibits legislatures from enacting laws that criminalize past conduct. *See, e.g., Calder v. Bull*, 3 Dall. 386, 390 (1798) (defining an Ex Post Facto law as one "that makes an action done before the passing of the law, and which was innocent when done, criminal").

82.     The courts are similarly constrained: "If a state legislature is barred by the Ex Post Facto clause from passing [a law criminalizing past conduct], it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie v. Columbia*, 378 U.S. 347, 354 (1964). "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids." *Id.*

83.    Administrative agencies like the Office of the Attorney General are also prohibited from enforcing regulations retroactively. *Upton v. SEC*, 75 F.3d 92 (2nd Cir. 1996) (holding that an SEC rule could not be enforced retroactively).

84.    The First Circuit has provided a succinct explanation of the Supreme Court's decision in *Bouie*: "Under this rubric, a novel interpretation may be upheld – but not as applied to conduct taking place before its first iteration." *United States v. Hussein*, 351 F.3d 9, 14-15 (1st Cir. 2003).

85.    As the First Circuit has noted, "a critical consideration [in a retroactivity analysis] is the extent to which a retroactive rule or interpretation adversely affects the reasonable expectations of concerned parties." *Cheshire Hosp. v. New Hampshire-Vermont Hospitalization Servs.*, 689 F.2d 1112, 1121 (1st Cir. 1982).

86.    For almost twenty years, Defendants narrowly construed the phrase "copies or duplicates" as demonstrated by their consistent conduct. Defendants reviewed and approved tens of thousands of now "illegal" firearm transfer applications from 1998 to July 20, 2016. By approving each transfer of a Massachusetts Compliant Firearm, Defendants confirmed again and again that the phrase "copies or duplicates" could not be so broad as to cover those firearms.

87.    Plaintiffs relied upon Defendants' confirmation to ensure that the firearms they bought and sold were compliant with Massachusetts law and that they were not committing any crimes by participating in transactions involving Massachusetts Compliant Firearms.

88.     The   Notice   of   Enforcement   declares   that   all   prior   transfers   of Massachusetts Compliant Firearms were illegal, but that it will not prosecute individual owners for transfers of such firearms that occurred before the date of the Notice of Enforcement or for the continuing possession of Massachusetts Compliant Firearms that were acquired before that date.

89.     The  Notice  of  Enforcement  does  **not**  declare  that  licensed  dealers  who engaged  in  these  transactions  were  complying  with  the  law  at  the  time  they  sold Massachusetts Compliant Firearms, nor does it declare that those dealers are immune from prosecution and loss of license for selling those firearms.

90.     In  fact,  the  Attorney  General  has  taken  the  position  that  initiating prosecutions  against  dealers  who  sold  Massachusetts  Compliant  Firearms  is "unquestionably within her power," but she has "chose[n] instead to remind the public that the state Assault weapons Ban prohibits not just the [Enumerated Banned Firearms], but also copies and duplicates thereof." Memorandum of Attorney General Maura Healey in Support of Her Motion to Dismiss at 28, ECF No. 9, *Pullman Arms Inc. v. Healey*, Case No. 4:16-cv-40136-TJH (D. Mass. Nov. 22, 2016); *see also id.* at 2 ("Rather than simply begin prosecuting gun dealers for the sale of [Massachusetts Compliant Firearms], the  Attorney  General  wished  to  notify  the  community  as  to  how  she  interpreted  the phrase 'copies or duplicates' and to encourage voluntary compliance with the statute.").

91.     The Notice of Enforcement essentially declares that law-abiding citizens who exercised their Second Amendment rights in a manner approved by the Commonwealth for almost two decades are now criminals and subject to prosecution.

92.     In addition, federal law criminalizes all sales of firearms that do not comply with state law. 18 U.S.C. 922(b)(2). Because of this, licensed dealers that sold Massachusetts Compliant Firearms are faced with a credible threat of prosecution under federal law based on Defendant Healey's retroactive interpretation of the Massachusetts law that is "a substantial change in its enforcement policy that was not reasonably communicated to the public," *Upton*, 75 F.3d at 97, at the time the transactions were occurring.

93.     Plaintiffs On Target and Overwatch, through no fault of their own, may be found to have violated the law by selling, prior to July 20, 2016, Massachusetts Compliant Firearms that are prohibited under the tests announced in the Notice of Enforcement.

94.     The Notice of Enforcement states that it is clarifying the law, not making new law or providing a new interpretation. Accordingly, all previous transactions consummated by Plaintiffs On Target and Overwatch involving Massachusetts Compliant Firearms now banned under either of the tests announced in the Notice of Enforcement could be found to have been illegal sales of firearms under both Massachusetts and federal law.

95.     Plaintiffs On Target and Overwatch face a credible threat of prosecution for having conducted sales that were potentially in violation of Massachusetts law.

96.     The Notice of Enforcement is a regulation promulgated by an administrative agency that retroactively enlarged the scope of a criminal statute. The Notice of Enforcement is unconstitutional, like an Ex Post Facto law passed by a legislature or a retroactive decision issued by a state supreme court.

### Count III
### (The Statutory Phrase "Copies or Duplicates" Is Unconstitutionally Vague)

97.     The preceding paragraphs are re-alleged and incorporated by reference.

98.     As explained above, the Definition Statute includes a list of enumerated firearms that fall within the definition of an "assault weapon," as well as "copies or duplicates" of those firearms.

99.     The phrase "copies or duplicates" is not defined by the Definition Statute, or anywhere else in Massachusetts law.

100.    The phrase, which was also in the Federal Ban, was not defined under federal law, but the legislative history of the Federal Ban makes clear that it was intended to be narrow.

101.    From 1998 until July 20, 2016, the Defendants' actions in approving the sale and transfer of Massachusetts Compliant Firearms demonstrates that the Defendants interpreted the definition of "copies or duplicates" not to include Massachusetts Compliant Firearms.

102.   In the Notice of Enforcement, Defendant Healey set forth a completely new and unprecedented interpretation of "copies or duplicates" and declared that all Massachusetts Compliant Firearms that had been sold since 1998 were illegal under this interpretation.

103.   Defendants have arbitrarily enforced different interpretations of the statute that criminalize vastly different scopes of conduct, exposing citizens of ordinary intelligence to criminal penalties without notice.

104.   Further compounding the vagueness problem is that the Notice of Enforcement itself implies that the two tests set forth by Defendant Healey are not exclusive of other tests that could be applied. As noted above, the Notice of Enforcement states that a manufacturer's advertising of a particular firearm will be "relevant" in determining whether it is a "copy or duplicate," but there is no guidance as to what this means or how it will be applied.

105.   The Notice of Enforcement states that a firearm that qualifies as a "copy or duplicate" under one of Defendant Healey's tests will remain a "copy or duplicate" even if it is altered to no longer meet those tests: "If a weapon, as manufactured or originally assembled, is a Copy or Duplicate under one or both of the applicable tests, it remains a prohibited Assault weapon even if it is altered by the seller." It is not possible for a law-abiding citizen of ordinary intelligence, or even a licensed dealer, to determine whether a firearm he or she wishes to purchase is prohibited as a "copy or duplicate" if he or she

cannot even rely on the current configuration of the firearm in his or her evaluation, but must also be aware of the firearm's historical configuration.

106.    The uncertainty of Defendants' interpretations of the phrase "copies or duplicates" chills exercise of Second Amendment rights—Plaintiffs and other citizens have no way of knowing what popular firearms will suddenly become "copies or duplicates" next, and fear of criminal penalties will chill the exercise of Plaintiffs' Second Amendment rights.

107.    The result of the vagueness created by the use of the term "copies or duplicates" and Defendants' varying interpretations is that a law-abiding citizen of average intelligence is not aware of what conduct is prohibited. This denies to Plaintiffs their right to due process of law, as guaranteed by the Fourteenth Amendment to the Constitution, because it subjects them to vague laws with no notice as to what conduct is actually prohibited.

Plaintiffs respectfully pray that this Honorable Court:

A.    Enter a declaratory judgment under 28 U.S.C. § 2201 that Mass. Gen. Laws ch. 140 §131M infringes on the right of the people of Massachusetts, including Plaintiffs, to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution, and is void and unenforceable;

B.    Enter a declaratory judgment under 28 U.S.C. § 2201 that the Notice of Enforcement, interpreting the phrase "copies or duplicates" in Mass. Gen. Laws ch. 140, § 121, is an unconstitutional retroactive application of new law that denies Plaintiffs due

process of law, in violation of the Fourteenth Amendment to the United States Constitution and is void and unenforceable;

C.      Enter a declaratory judgment under 28 U.S.C. § 2201 that the phrase "copies or duplicates" in Mass. Gen. Laws ch. 140, § 121, is vague, fails to give notice, and violates the right of Plaintiffs to due process of law, contrary to the Fourteenth Amendment to the United States Constitution and is void and unenforceable;

D.      Enter an injunction enjoining Defendants and their officers, agents, and employees from administration and enforcement of Mass. Gen. Laws ch. 140 §§ 121 and 131M;

E.      Award Plaintiffs costs and attorneys' fees under 42 U.S.C. § 1988(b); and

F.      Grant such other relief as the Court deems proper.

Respectfully submitted,

/s/ James M. Campbell
James M. Campbell (BBO#541882)
Campbell Campbell Edwards & Conroy
One Constitution Center
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com

John Parker Sweeney
(*Pro Hac Vice* Motion forthcoming)
T. Sky Woodward
(*Pro Hac Vice* Motion forthcoming)
James W. Porter, III
(*Pro Hac Vice* Motion forthcoming)
Marc A. Nardone
(*Pro Hac Vice* Motion forthcoming)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@bradley.com

*Counsel for Plaintiffs*