UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

DAVID SETH WORMAN, ANTHONY LINDEN,
JASON WILLIAM SAWYER, NICHOLAS
ANDREW FELD, PAUL NELSON
CHAMBERLAIN, GUN OWNERS' ACTION
LEAGUE, INC., ON TARGET TRAINING, INC.,
AND OVERWATCH OUTPOST,

                    Plaintiffs,

          v.

CHARLES D. BAKER, in his official capacity as
Governor of the Commonwealth of Massachusetts;
MAURA HEALEY, in her official capacity as
Attorney General of the Commonwealth of
Massachusetts; DANIEL BENNETT, in his official
capacity as the Secretary of the Executive Office of
Public Safety and Security; COLONEL RICHARD
D. McKEON, in his official capacity as
Superintendent of the Massachusetts State Police;
and MASSACHUSETTS STATE POLICE,

                    Defendants.

CIVIL ACTION
NO. 17-10107-WGY

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendants Charles D. Baker, in his official capacity as Governor of the Commonwealth

of Massachusetts; Colonel Richard McKeon, in his official capacity as Superintendent of the

Massachusetts State Police; and the Massachusetts State Police hereby move to dismiss all claims

asserted against them. The Eleventh Amendment, which shields state officials from suit in federal

court, requires dismissal of the claims against the Governor and the Colonel because they lack any

"special relation" to the statute challenged in this case, the Massachusetts Assault Weapons Ban,

G.L. c. 140, §§ 121 and 131M. *Ex Parte Young*, 209 U.S. 123, 157 (1908). The claims against the

Massachusetts State Police must also be dismissed because the Eleventh Amendment proscribes

all claims brought against state agencies in federal court.

## BACKGROUND

The plaintiffs in this lawsuit challenge the constitutionality of the state Assault Weapons Ban, G.L. c. 140, §§ 121 and 131M, and an Enforcement Notice on Prohibited Assault Weapons issued by the Massachusetts Attorney General's Office in July 2016. Compl. ¶ 9. They have asserted three claims under 42 U.S.C. § 1983. *Id.* ¶ 28. Named as defendants are one state agency, the Massachusetts State Police, and four state officials: Charles D. Baker, in his official capacity as Governor of the Commonwealth of Massachusetts; Maura Healey, in her official capacity as Attorney General of the Commonwealth; Daniel Bennett, in his official capacity as Secretary of the Executive Office of Public Safety and Security ("EOPSS"); and Colonel Richard D. McKeon, in his official capacity as Superintendent of the Massachusetts State Police. *Id.* ¶¶ 21–26.

## ARGUMENT

Three of the defendants in this case have been improperly named and must be dismissed. Governor Baker and Colonel McKeon must be dismissed because they lack the "special relation" to the Assault Weapons Ban that is needed to bring them within the *Ex Parte Young* exception to Eleventh Amendment immunity. And the Massachusetts State Police must be dismissed because the Eleventh Amendment bars claims against state agencies in federal court.

I.    **The Eleventh Amendment Bars All Claims Against Governor Baker and Colonel McKeon Because They Lack Any Special Relation to Enforcement of the Assault Weapons Ban.**

The Eleventh Amendment to the United States Constitution bars lawsuits in federal court against unconsenting States. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (any federal court lawsuit "in which the State or one of its agencies . . . is named as the defendant is proscribed by the Eleventh Amendment"); *Edelman v. Jordan*, 415 U.S. 651, 662–63

(1974) (same). The Amendment also bars claims against state officials because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). As state officials sued in their official capacities, *see* Compl. ¶¶ 21, 24, 26, Governor Baker and Colonel McKeon share in the Commonwealth's Eleventh Amendment immunity. *See Will*, 491 U.S. at 71; *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48–49 (1st Cir. 2003).

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a narrow exception to the Eleventh Amendment bar on federal court claims against state officials. That exception allows plaintiffs to seek prospective injunctive relief against an alleged ongoing violation of federal law by suing a state official in his or her official capacity. *See Rosie D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002). The named official, however, must have a "special relation to the particular statute alleged to be unconstitutional." *Ex Parte Young*, 209 U.S. at 157. Put otherwise, there must be a "sufficiently intimate" link between the defendant official and enforcement of the challenged law or conduct. *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979).

*Ex Parte Young*'s "special relation" requirement preserves state sovereignty by shielding unconsenting states from federal court lawsuits. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent."); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) ("The special-relation requirement protects a state's Eleventh Amendment immunity."). A state official sued in his official capacity "must have some connection with the enforcement of the [challenged] act, or else [a lawsuit] is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Ex Parte Young*, 209 U.S. at 157. In particular,

if "the constitutionality of every act passed by the legislature could be tested by a suit against the governor . . . based upon the theory that . . . as the executive of the State, [he is], in a general sense, charged with the execution of all its laws," the Eleventh Amendment would be circumvented. *Id.* That strategy, the Court explained, "cannot be applied to the States of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons." *Id.* (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). The *Ex Parte Young* exception therefore demands precision in naming state officials as defendants in federal court lawsuits.

Governor Baker has no "special relation" to the Assault Weapons Ban that justifies the plaintiffs' decision to name him as a defendant in this lawsuit.[1] The Governor is not mentioned in the text of the statutes that codify the Assault Weapons Ban, G.L. c. 140, §§ 121 and 131M. Nor do any other statutes establish a relationship between the Governor and the Assault Weapons Ban. Instead, state law makes the Attorney General and the eleven District Attorneys responsible for initiating criminal prosecutions for violations of the Assault Weapons Ban. *See Commonwealth v. Kozlowsky*, 238 Mass. 379, 389–90 (1921) (explaining that the Attorney General is the "the chief law officer of the state" and has "extensive power . . . in criminal prosecutions"); G.L. c. 12, §§ 10, 12, 27 (authority of the Attorney General and District Attorneys to enforce criminal laws like the Assault Weapons Ban). Aside from the prosecutorial domain, state law also makes the Secretary of EOPSS responsible for implementing and promulgating regulations on certain firearms control laws. *See* G.L. c. 140, § 131¾ (authority to promulgate regulations); Compl. ¶ 23 (acknowledging

---

[1] It is a question of state law whether a defendant has any relationship to enforcement of a challenged statute. *Shell Oil Co.*, 608 F.2d at 211. However, "it is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of *Ex Parte Young*." *Id.* (citing *Gras v. Stevens*, 415 F. Supp. 1148, 1152 (S.D.N.Y. 1976) (three-judge court) (opinion of Friendly, J.)).

that the Secretary is responsible for overseeing the "Firearms Records Bureau, which maintains records of all firearm transfers in Massachusetts").[2]

Nor does the complaint contain any allegations that establish that Governor Baker has a "special relation" to the Assault Weapons Ban. Indeed, the only allegation specific to the Governor states that he "serves as the 'supreme executive magistrate' of the government of Massachusetts and is ultimately responsible for the enforcement of the laws of Massachusetts including the challenged prohibition. MASS. CONST. ch. II, § 1." Compl. ¶ 21. But, as the First Circuit explained, "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Shell Oil Co.*, 608 F.2d at 211. Other courts have likewise held that a governor's general duty to enforce state laws is insufficient to satisfy *Ex Parte Young*'s "special relation" requirement. *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) ("although Governor Gilmore is under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacks a specific duty to enforce the challenged statutes"); *Harris v. McDonnell*, 988 F. Supp. 2d 603, 611 (W.D. Va. 2013) ("Virginia Governor's general supervisory authority over the Commonwealth's executive branch does not constitute a special relation to the challenged same-sex marriage ban"); *D.G. ex rel. Stricklin v. Henry*, 591 F. Supp. 2d 1186, 1188–89 (N.D. Okla. 2008) (*Ex Parte Young* standard not satisfied because the Governor was "in no sense responsible for actually administering the foster care system" and an injunction

---

[2] The fact that the EOPSS Secretary is a member of the Governor's Cabinet who "serve[s] under the Governor," G.L. c. 6, § 17A, does not establish a "special relation" between the Governor and the Assault Weapons Ban. All of the Executive Office Secretaries are members of the Cabinet. *See id.* If that connection were sufficient to establish a "special relation," the Governor could be forced to defend federal-court challenges to any statute implemented by any of the Commonwealth's Executive Offices.

against him "would be essentially meaningless"). Courts similarly have dismissed claims against Attorneys General and other state officials, explaining that "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996); *see also McBurney*, 616 F.3d at 400; *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998); *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993); *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976).

*Ex Parte Young* requires a closer connection—namely, "proximity to and responsibility for the challenged state action"—before a governor can be called to defend an action in federal court. *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008) (emphasis omitted); *see also Snoeck*, 153 F.3d at 986 (the connection "must be fairly direct" (internal quotation marks omitted)). For example, in *Connor B. ex rel. Vigurs v. Patrick*, the Court found the connection between former Massachusetts Governor Deval Patrick and policies governing the Department of Children and Families ("DCF") "'sufficiently intimate'" because Governor Patrick had recently issued an executive order that created "direct involvement in the ongoing maintenance of the state child welfare system." 771 F. Supp. 2d 142, 159 (D. Mass. 2011) (quoting *Shell Oil Co.*, 608 F.2d at 211). That executive order created the Office of the Child Advocate, an office led by an official who would "repor[t] directly to the Governor" and who would be "charged with reviewing DCF's programs and procedures and resolving complaints relative to the provision of services to children by an executive agency." *Id.* (internal quotation marks omitted). Here, in contrast, Governor Baker has not issued an executive order or taken any other action establishing his direct involvement in implementation or enforcement of the Assault Weapons Ban. Unlike in *Connor B.*, there is no "sufficiently intimate" link between Governor Baker and the Assault Weapons Ban. *Shell Oil Co.*,

608 F.2d at 211.

Similarly, Colonel McKeon, like Governor Baker, lacks any "special relation" to enforcement of the Assault Weapons Ban. The text of the Assault Weapons Ban does not mention the Colonel, nor does any other law establish any specific connection between the Colonel and the statute. The only allegation in the complaint particular to the Colonel states that he is "responsible for enforcing the challenged laws and for overseeing the operations of Defendant Massachusetts State Police." Compl. ¶ 24. The Colonel indeed has authority to investigate crimes and arrest individuals suspected of committing crimes, *see* G.L. c. 22C, § 3, but he cannot initiate criminal prosecutions, and his general investigative authority is no greater with respect to the Assault Weapons Ban than it is with respect to any other criminal law. For the reasons discussed above, the Colonel's general authority in these areas is not sufficient to subject him to suit under *Ex Parte Young*'s exception to Eleventh Amendment immunity. *See supra*, at 5–6. If it were otherwise, the Colonel could be named in any lawsuit challenging the constitutionality of any criminal law, as could any other state official with authority to investigate crimes and execute arrests. *See, e.g.*, G.L. c. 21A, §§ 10A, 10C (Massachusetts Environmental Police); Mass. St. 1968, c. 664, § 1 (MBTA Transit Police). That would not be consistent with *Ex Parte Young*'s requirement that a named defendant, sued in his official capacity, have a "special relation to the particular statute alleged to be unconstitutional." *Ex Parte Young*, 209 U.S. at 157.

Moreover, there is no compelling reason for naming Governor Baker and Colonel McKeon as defendants in this lawsuit. The plaintiffs have, of course, separately named Attorney General Healey and EOPSS Secretary Bennett in their official capacities as defendants. *See* Compl. ¶¶ 22–23, 26. Should the plaintiffs prevail on any of their claims in this case, this Court could enter declaratory or injunctive relief against those state officials. *See* Compl. p. 31–32. Dismissal of the

Governor and Colonel, therefore, would have no effect on the plaintiffs' ability to obtain redress from this Court.

## II.      **The Eleventh Amendment Bars All Claims Against the Massachusetts State Police.**

The Eleventh Amendment also requires dismissal of the claims against the Massachusetts State Police, which are all brought under 42 U.S.C. § 1983. Compl. ¶ 28. As discussed, the Eleventh Amendment bars lawsuits in federal court "in which the State or one of its agencies is named as the defendant." *Pennhurst*, 465 U.S. at 100; *see also Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (internal quotation marks omitted)). Because the Massachusetts State Police is an agency of the Commonwealth of Massachusetts, *see* G.L. c. 22C, § 2, it shares in and is protected by the Commonwealth's Eleventh Amendment immunity. *See Santiago v. Keyes*, 839 F. Supp. 2d 421, 427–28 (D. Mass. 2012) (Massachusetts State Police is an arm of the state and is entitled to Eleventh Amendment immunity); *Beauregard v. Epstein*, 1994 WL 523816, at *2 (D. Mass. Sept. 19, 1994) ("Defendant, State Police, is considered an arm of the State and is, therefore, immune from federal suit under the Eleventh Amendment to the United States Constitution.").[3]

Each of the plaintiffs' claims against the Massachusetts State Police must also be dismissed

---

[3] Neither of the exceptions to state agencies' Eleventh Amendment immunity applies here: Congress did not abrogate the immunity of the Commonwealth or Massachusetts State Police when it enacted 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 338–40 (1979), and the State Police has not consented to the plaintiffs' claims by statute or by its conduct in litigation.

because the Commonwealth and its agencies are not "person[s]" subject to suit under § 1983. *See Will*, 491 U.S. at 71. Because the State Police is not a "person" subject to suit under § 1983, and all of the plaintiffs' claims are brought pursuant to § 1983, the claims must be dismissed. *See Santiago*, 839 F. Supp. 2d at 427 (Massachusetts State Police "cannot constitute a 'person' under section 1983").

## CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion to Dismiss should be granted, and this Court should dismiss all claims asserted against Governor Baker, Colonel McKeon, and the Massachusetts State Police.

Respectfully submitted,

CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts; MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts; DANIEL BENNETT, in his official capacity as Secretary of the Executive Office of Public Safety and Security; COLONEL RICHARD D. MCKEON, in his official capacity as Superintendent of the Massachusetts State Police; and MASSACHUSETTS STATE POLICE,

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Julia E. Kobick
Julia E. Kobick, BBO # 680194
William W. Porter, BBO # 542207
Gary Klein, BBO # 560769
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2559
Date: July 14, 2017          julia.kobick@state.ma.us

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the Court's ECF, system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants by first-class mail on July 14, 2017.

/s/ Julia Kobick
Julia Kobick
Assistant Attorney General