**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DAVID SETH WORMAN, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1-17-CV-10107-WGY** |
| | ) | |
| **MAURA HEALEY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs David Seth Worman, Anthony Linden, Jason William Sawyer, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost (collectively, "Plaintiffs"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment.

# TABLE OF CONTENTS

TABLE OF MAJOR AUTHORITIES ............................................................................................ iii

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ...................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.   The Challenged Laws Deny Plaintiffs' Rights Protected by the Second
       Amendment. ............................................................................................................... 4

        A.  The Text and History of the Second Amendment Demonstrate that the
            Challenged Laws are Unconstitutional. ....................................................................... 4

        B.  The Two-Part Approach of Other Circuits Does Not Adequately Protect the
            Plaintiffs' Second Amendment Rights and Should Not Be Followed. ......................... 8

        C.  Even if the Court Adopts the Two-Part Approach, the Challenged Laws Are
            Still Unconstitutional. ............................................................................................... 10

            1.The Banned Firearms and Magazines Are Protected by the Second Amendment…10

            2.The Only Appropriate Level of Heightened Scrutiny Is Strict Scrutiny, and the
              Challenged Laws Fail Strict Scrutiny Because They Are Not Narrowly Tailored to a
              Compelling State Interest. .......................................................................................... 11

            3.Alternatively, the Challenged Laws Fail Even Intermediate Scrutiny for Lack of Fit
              with Any Government Interest. .................................................................................... 14

    II.  The Challenged Laws Deny Plaintiffs' Rights to Due Process Under the
       Fourteenth Amendment. ............................................................................................ 15

        A.  The Notice of Enforcement Interprets the Challenged Laws to Criminalize
            Retroactively Prior Transactions of Firearms and Magazines That Were
            Lawful at the Time They Occurred, Denying Plaintiffs Due Process of Law. ........... 15

        B.  The Notice of Enforcement Demonstrates the Phrase "Copies or Duplicates"
            as Used in the Challenged Laws Is Unconstitutionally Vague. .................................. 17

CONCLUSION .................................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................................. 21

# TABLE OF MAJOR AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................3, 4

*Batty v. Albertelli,* Case No. 15-10238, 2017 WL 740989, at *10 (D. Mass. Feb.
  24, 2017) ...............................................................................................................13

*Bouie v. City of Columbia*,
  378 U.S. 347 (1964)...........................................................................................15, 16, 17

*Caetano v. Massachusetts*,
  136 S. Ct. 1027 (2016) (per curiam) ........................................................... *passim*

*Chicago v. Morales*,
  527 U.S. 41 (1999)...........................................................................................17, 19

*District of Columbia v. Heller*,
  554 U. S. 570 (2008)............................................................................. *passim*

*Duncan v. Becerra*,
  -- F. Supp. 3d --, 2017 WL 2813727 (S.D. Cal. June 29, 2017)............................10

*Farmers Ins. Exch. v. RNK, Inc.*,
  632 F.3d 777 (1st Cir. 2011)...................................................................................3

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012)...............................................................................................16

*Fletcher v. Haas*,
  851 F. Supp. 2d 287 (D. Mass. 2012) ...................................................................13

*Friedman v. City of Highland Park, III*,
  136 S.Ct. 447 (2015)....................................................................................6, 10, 12

*Fyock v. Sunnyvale*,
  779 F.3d 991 (9th Cir. 2015) ............................................................................6, 12

*GeorgiaCarry.Org, Inc. v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ..............................................................................9

*Gould v. O'Leary*,
  Case No. 16-10181, 2017 WL 6028342 (D. Mass. Dec. 5, 2017)..........................13

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)..................................................................................................17

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) ........................................................... *passim*

*Hightower v. City of Boston*,
  693 F.3d 61 (1st Cir. 2012)..................................................................................5, 7

*Kolbe v. Hogan*,
  849 F.3d 114 (4th Cir. 2017) ....................................................................1, 10, 12

*Kolender v. Lawson*,
  461 U.S. 352 (1983)..................................................................................................19

*McCullen v. Coakley*,
  134 S. Ct. 2518 (2014).............................................................................................14

*McDonald v. Chicago*,
  561 U. S. 742 (2010) ..................................................................... *passim*

*Morin v. Leahy*,
  189 F. Supp. 3d 226 (D. Mass. 2016), *aff'd*, 862 F.3d 123 (1st Cir. 2017).....................10, 12

*Nat'l Org. for Marriage v. McKee*,
  649 F.3d 34 (1st Cir. 2011)....................................................................................19

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  700 F.3d 185 (5th Cir. 2012) ............................................................................9, 12

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
  804 F. 3d 242 (2d Cir. 2015)..........................................................................6, 9, 12

*Powell v. Tompkins*,
  783 F.3d 332 (1st Cir. 2015)................................................................................10

*Rideout v. Gardner*,
  838 F.3d 65 (1st Cir. 2016)............................................................................13, 14

*Rogers v. Tenn.*,
  532 U.S. 451 (2001)..........................................................................................15, 16

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
  411 U.S. 1 (1973)......................................................................................................12

*Silvester v. Harris*,
  843 F.3d 816 (9th Cir. 2016) ...............................................................................11

*Staples v. United States*,
   511 U.S. 600 (1994) ..................................................................................7, 11, 18

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) ................................................................................................14

*U.S. v. Nieves-Castano*,
   480 F.3d 597 (1st Cir. 2007) ...................................................................................17

*United States v. Chester*,
   628 F.3d 673 (4th Cir. 2010) .....................................................................................9

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ...................................................................................9

*United States v. Greeno*,
   679 F.3d 510 (6th Cir. 2012) .....................................................................................9

*United States v. Hussein*,
   351 F.3d 9 (1st Cir. 2003) .......................................................................................15

*United States v. Lanier*,
   520 U.S. 259 (1997) .................................................................................................15

*United States v. Marzzarella*,
   614 F. 3d 85 (3d Cir. 2010) .......................................................................................9

*United States v. Masciandaro*,
   638 F.3d 458 (4th Cir. 2011) ...................................................................................12

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000) .................................................................................................13

*United States v. Reese*,
   627 F.3d 792 (10th Cir. 2010) ...................................................................................9

*United States v. Rene E.*,
   583 F.3d 8 (1st Cir. 2009) ...............................................................................1, 7, 15

*Upton v. SEC*,
   75 F.3d 92 (2d Cir. 1996) ...................................................................................15, 17

**Statutes**

G. L. c. 140 § 121 ...........................................................................................................2

G. L. c. 140 § 131M .......................................................................................................2

**Other Authorities**

Allen Rostron, *Justice Breyer's Triumph in the Third Battle Over the Second Amendment*, 80 GEO. WASH. L. REV. 703, 706-07 (2012) .........................................................9

Darrell A.H. Miller, *Text, History, and Tradition: What the Seventh Amendment Can Teach Us About the Second*, 122 YALE L.J. 852, 855 (2013)............................................9

David B. Kopel & Joseph G.S. Greenlee, *The Federal Circuits' Second Amendment Doctrines*, 61 ST. LOUIS U. L.J. 204, 265 (2016)...................................................7

FED. R. CIV. P. 56 .................................................................................................................3

FED. R. CIV. P. 56(a) ............................................................................................................3

Article I, Section 10 of the United States Constitution..................................................15

Second Amendment to the United States Constitution........................................... *passim*

Fourteenth Amendment to the United States Constitution ..................................... *passim*

## INTRODUCTION

This case presents an issue of first impression in this Court as well as in the United States Court of Appeals for the First Circuit. Massachusetts has prohibited nearly all semiautomatic firearms and standard ammunition magazines holding more than ten rounds. These prohibitions infringe upon Plaintiffs' rights as law-abiding, responsible citizens to acquire common firearms typically possessed for lawful purposes to keep in their homes for self-defense.

Summarily reversing a Supreme Judicial Court of Massachusetts opinion that upheld a statewide ban on stun guns, the United States Supreme Court recently reaffirmed: "'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding,' *District of Columbia v. Heller*, 554 U. S. 570, 582 (2008), and that this 'Second Amendment right is fully applicable to the States,' *McDonald v. Chicago*, 561 U. S. 742, 750 (2010)." *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1027 (2016) (per curiam). In *Heller*, the Supreme Court declared that the Second Amendment protects arms "in common use" that are "typically possessed by law-abiding citizens for lawful purposes." 554 U.S at 624-25. The *Heller* Court further declared that a ban of such arms is "off the table" because the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635-36.

In *Heller*, the Court extensively examined the text, history, precedent, and policy of the Second Amendment to determine that a ban on common firearms violates the Second Amendment. The First Circuit has remained more faithful to the teachings of *Heller* than other courts that have developed their own jurisprudence to consider Second Amendment challenges. *Compare, e.g., United States v. Rene E.*, 583 F.3d 8, 11-16 (1st Cir. 2009) (examining text and history to determine prohibition on juvenile ownership of handguns does not violate the Second Amendment); *with Kolbe v. Hogan*, 849 F.3d 114, 132-34 (4th Cir. 2017) (eschewing the Supreme Court's text-and-

history analysis for a more familiar interest balancing inquiry borrowed from First Amendment jurisprudence involving a two-part approach). Faithful application of *Heller* demonstrates that Massachusetts has infringed upon Plaintiffs' Second Amendment rights by prohibiting the most popular firearms in the country – even in the home for self-defense by law-abiding citizens.

The challenged Massachusetts laws, G. L. c. 140 §§ 121, 131M ("Challenged Laws"), enacted in 1998, prohibit by name semiautomatic rifles such as the Colt AR-15 – firearms that are, by far, the most popular long guns in the country – and many other popular firearms (the "Enumerated Banned Firearms"), as well as their "copies or duplicates . . . of any caliber" that have two or more of certain specified features (collectively, the "Banned Firearms"). *See* G. L. c. 140 § 121; *see also* Statement of Undisputed Facts (hereinafter, "SUF"), at pp. 1–2, ¶¶ 1–2; p. 3, ¶ 6. In July 2016, Defendant Attorney General Maura Healey issued a Notice of Enforcement ("Notice of Enforcement"), expanding the firearm ban to cover virtually all semiautomatic firearms commonly kept for lawful purposes, including many firearms that had been approved by Defendants as compliant with Massachusetts law for nearly twenty years (the "Massachusetts Compliant Firearms"), and excepting only certain firearms specified by manufacturer and model. *See* SUF at pp. 3–4, ¶¶ 7-10. The Challenged Laws also ban ammunition magazines with a capacity greater than ten rounds, which are commonly supplied as standard equipment with many semiautomatic firearms (the "Banned Magazines"). G. L. c. 140 § 121; SUF at p. 3 ¶¶ 5–6; p. 13, ¶ 36.

The Plaintiffs include law-abiding, responsible citizens of Massachusetts who either already keep Banned Firearms and Magazines and/or who want to acquire and keep the Banned Firearms and Magazines in their homes for self-defense, among other lawful purposes. *See* SUF at pp. 6–9, ¶¶ 19–22. Plaintiff Gun Owners' Action League, Inc. is a non-profit membership

organization representing for over forty years more than 15,000 Massachusetts firearm owners as well as firearm and marksmanship clubs. *See* SUF at p. 9, ¶ 23. Plaintiffs On Target Training, Inc. and Overwatch Outpost are licensed firearms dealers in Massachusetts who sold Massachusetts Compliant Firearms until the issuance of the Notice of Enforcement, and who would continue to sell the Banned Firearms and Magazines but for the credible threat of prosecution and loss of license under the Challenged Laws and Notice of Enforcement. *See* SUF at pp. 10–11 ¶¶ 24–25.

The Challenged Laws and Notice of Enforcement are plainly offensive to the Second and Fourteenth Amendments because they ban common firearms and magazines that law-abiding citizens typically possess for lawful purposes and use the vague, undefined term "copies or duplicates" – retroactively interpreted – to deny due process of law. *Heller* teaches that the government cannot infringe the fundamental right of law-abiding citizens to choose which common firearms to keep for self-defense. Plaintiffs respectfully request this Court apply the Supreme Court's text-and-history analysis to safeguard Plaintiffs' fundamental right to keep and bear arms for self-defense in the home – the core right of the Second Amendment.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, Plaintiffs must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).

Once the movant has made the requisite showing, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (alterations omitted). The non-moving party cannot "rest upon mere allegations or denials of [its] pleadings," but instead must "present affirmative evidence." *Id.* at 256-57.

## ARGUMENT

### I.   The Challenged Laws Deny Plaintiffs' Rights Protected by the Second Amendment.

Defendants have the burden to prove the Challenged Laws pass constitutional muster because "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms[.]" *Heller*, 554 U.S. at 582; *Caetano*, 136 S. Ct. at 1027.

### A.   The Text and History of the Second Amendment Demonstrate that the Challenged Laws are Unconstitutional.

In 2008, *Heller* recognized the individual's right to have common firearms that are typically kept "for lawful purposes like self-defense." *Heller,* 554 U.S. at 624, 636. The core interest identified by *Heller* is the right of law-abiding, responsible citizens to possess a common firearm in the home where "the need for defense of self, family, and property is most acute." *Id.* at 628. Subsequently applying the Second Amendment to the states through the Due Process Clause of the Fourteenth Amendment, the Court characterized the right to bear arms as "fundamental to [the nation's] scheme of ordered liberty." *McDonald*, 561 U.S. at 767.

After examining extensively the text and meaning of the enumerated right and the historical tradition of firearm ownership, *see generally Heller*, 554 U.S. at 576-628, the Court recognized that a prohibition of firearms that are in common use by law-abiding citizens is so clearly unconstitutional that the Court need not resort to applying any standard of review. The Court ruled that "the absolute prohibition of handguns held and used for self-defense in the home" is a policy choice that is "off the table." *Id*. at 636. In the process, the Court rejected expressly any "interest-balancing inquiry," explaining:

> We know of no other enumerated constitutional right whose core protection has been subject to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government – even the Third Branch of

> Government – the power to decide on a case-by-case basis whether the right is *really worth* insisting on. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.

*Id.* at 634-35.

The controlling factor in *Heller* was whether the firearms were "typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625. Once the *Heller* Court was satisfied that this condition had been met, it concluded that a prohibition on such firearms could not survive. *Id.* at 628-29. Since *Heller*, the Court has continued to apply this text-and-history analysis to strike down categorical bans of arms commonly possessed for lawful purposes, without resorting to any interest-balancing test. *See McDonald*, 561 U.S. at 791 (striking municipal bans similar to those in *Heller*); *Caetano*, 136 S. Ct. at 1028 (summarily reversing opinion upholding stun gun ban). In *Caetano,* the concurring opinion explained that, "[w]hile less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country" and that "Massachusetts' categorical ban of such weapons therefore violates the Second Amendment." *Id.* at 1033 (Alito, J., concurring).

There can be no doubt here that the Challenged Laws prohibit conduct protected by the Second Amendment as it was historically understood. Plaintiffs are prohibited from acquiring for self-defense in the home common firearms typically possessed for lawful purposes (SUF at pp. 1–2, ¶¶ 1-2; p. 3, ¶ 6; p. 11, ¶ 27, p. 14, ¶ 37), precisely the kind of prohibition that the Supreme Court found to be forbidden by the Second Amendment in *Heller* and *McDonald*, and again in *Caetano*. *Heller,* 554 U.S. at 635; *McDonald*, 561 U.S. at 780, 791; *Caetano*, 136 S. Ct. at 1028; *see also Hightower v. City of Boston*, 693 F.3d 61, 71 (1st Cir. 2012) (recognizing that *Heller* "was concerned with weapons of the type characteristically used to protect the home"). The Supreme Court also has repeatedly made clear that the Second Amendment is not limited to just those

firearms in common use at the time of ratification, but also extends to common *modern* firearms that are useful for self-defense, observing that arguments to the contrary "border on the frivolous." *Caetano*, 136 S. Ct. at 1029 (per curiam) (Alito, J., concurring).

Other federal courts already have determined that the firearms and magazines banned by the Challenged Laws are "in common use" by law-abiding citizens. *See, e.g., New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F. 3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons and large capacity magazines at issue are 'in common use' as that term was used in *Heller*."); *see also Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015) (holding that the lower court did not abuse its discretion by inferring from the evidence that large capacity magazines are in common use); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*"). The Court in *Heller II* addressed this issue of commonality directly, stating:

> We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,' as the plaintiffs contend. Approximately 1.6 million AR-15s alone have been manufactured since 1986, and in 2007 this one popular model accounted for 5.5 percent of all firearms, and 14.4 percent of all rifles, produced in the U.S. for the domestic market. As for magazines, fully 18 percent of all firearms owned by civilians in 1994 were equipped with magazines holding more than ten rounds, and approximately 4.7 million more such magazines were imported into the United States between 1995 and 2000.

670 F.3d at 1261. Moreover, the Banned Firearms and Magazines are typically possessed for lawful purposes. *See* SUF at p. 14, ¶ 37.

Unlike machine guns and sawed-off shotguns, neither the Banned Firearms nor the Banned Magazines have been banned traditionally. *Heller II*, 670 F.3d at 1260 ("We are not aware of evidence that prohibitions on either semi-automatic rifles or large-capacity rifles are longstanding and thereby deserving of a presumption of validity."); *Staples v. United States*, 511 U.S. 600, 611-12 (1994) (declaring that the semiautomatic AR-15 rifle and similar firearms fall outside the

traditionally regulated categories of machine guns and sawed off shotguns, and "traditionally have been widely accepted as lawful possessions").

The First Circuit has held: "Courts have consistently recognized that *Heller* established that the possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment." *Hightower*, 635 F.3d at 72. Further, *Heller*'s text-and-history analysis is reflected in the First Circuit's practice of analyzing Second Amendment challenges based on text, history, precedent, and policy rather than adopting the balancing approach followed by other circuits. *See Rene E.*, 583 F.3d at 12-16 (examining contemporary federal restrictions on firearm possession by juveniles and historical state laws imposing similar restrictions and considering whether the Founders would have regarded a prohibition on juvenile possession as consistent with the Second Amendment); *see also* David B. Kopel & Joseph G.S. Greenlee, *The Federal Circuits' Second Amendment Doctrines*, 61 ST. LOUIS U. L.J. 193, 266 (2017) ( "The First Circuit . . . simply looks at text, history, precedent, and policy . . . .").

Consistent determinations of other courts, as well as undisputed facts from the record, unequivocally confirm that the Banned Firearms and Magazines are and have been commonly possessed for lawful purposes for decades, and therefore should be protected by the Second Amendment under *Heller*, *McDonald*, and *Caetano*. *See* SUF at pp. 12–21, ¶¶ 28–61. The Challenged Laws completely prohibit the exercise of the Second Amendment right of law-aiding citizens to possess these protected arms in the home for self-defense. The Challenged Laws should be held unconstitutional without resort to any interest balancing.

To the extent there was any doubt of this, the Supreme Court's per curiam summary reversal last year of a decision upholding "Massachusetts' categorical ban" of a class of weapons "widely owned and accepted as a legitimate means of self-defense across the country," *Caetano*,

136 S. Ct. at 1033 (Alito, J., concurring), sent a clear message the Court meant what it said in *Heller*. Massachusetts' categorical prohibition on the Banned Firearms and Magazines should be found unconstitutional, without resorting to any balancing test, as was the case with the District of Columbia's bans in *Heller*, and the municipal bans in *McDonald*.

### B. The Two-Part Approach of Other Circuits Does Not Adequately Protect the Plaintiffs' Second Amendment Rights and Should Not Be Followed.

*Heller* made clear that judicial balancing of the individual right to bear arms protected by the Second Amendment against competing government interests is precluded because this balance has already been struck in the Second Amendment itself, which "is the very product of an interest balancing by the people." *Heller*, 544 U.S. at 635. The majority in *Heller* expressly rejected this "interest-balancing" approach proposed by Justice Breyer in his dissent, because the approach was in substance, if not in name, a form of intermediate scrutiny. *See id.* at 634-35. And, if there were any lingering doubt on this vital question, the Court dispelled it in *McDonald,* when it reiterated that *Heller* "expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest-balancing." *McDonald,* 561 U.S. at 785.

Despite this unambiguous rejection of interest balancing by the Supreme Court, and the Court's own example of using the text-and-history analysis, a number of lower courts in the wake of *Heller* have not followed the Court's explicit instructions. Instead, they have resolved Second Amendment claims by applying a form of intermediate scrutiny resembling Justice Breyer's interest-balancing test – the very test the Court flatly rejected in *Heller*. This began in 2010, when the Third Circuit, drawing upon First Amendment principles, crafted a two-part approach for evaluating Second Amendment claims:

> First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee . . . . If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end

scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

*United States v. Marzzarella*, 614 F. 3d 85, 89 (3d Cir. 2010). This two-part approach has since been adopted by other Circuits.[1]

These decisions, respectfully, are not faithful to *Heller* and *McDonald. See, e.g.*, Allen Rostron, *Justice Breyer's Triumph in the Third Battle over the Second Amendment*, 80 GEO. WASH. L. REV. 703, 706-07 (2012) ("The lower courts . . . have effectively embraced the sort of interest-balancing approach that Justice Scalia condemned."); Darrell A.H. Miller, *Text, History, and Tradition: What the Seventh Amendment Can Teach Us About the Second*, 122 YALE L.J. 852, 855 (2013) ("Some judges . . . have simply ignored the Court's rejecting of balancing tests.").

In contrast to the overly complex balancing of interests that the two-part approach requires (criticized even by the courts applying it, s*ee Kolbe*, 849 F.3d at 135-36), *Heller* simply asks whether the law bans types of firearms commonly used for a lawful purposes – regardless of whether adequate alternatives to self-defense exists. *See Friedman*, 136 S. Ct. at 449 (Thomas, J., dissenting); *see also Duncan v. Becerra*, -- F. Supp. 3d --, Case No. 3:11-cv-1017, 2017 WL 2813727, at *6-7 (S.D. Cal. June 29, 2017) (criticizing the two-part approach as "an overly complex analysis that people of ordinary intelligence cannot be expected to understand . . . which usually result[s] in Second Amendment restrictions passing an intermediate scrutiny test" and "appear[s] to be at odds with the simple test used by the Supreme Court in *Heller*").

---

[1] *See Kolbe*, 849 F.3d at 135-36; *Cuomo,* 804 F.3d at 254; *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 195 (5th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 518, 520 (6th Cir. 2012); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1248, 1260 n.34 (11th Cir. 2012); *Heller II*, 670 F.3d at 1252; *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010).

The First Circuit has acknowledged the two-part approach, but has not adopted it. *See Powell v. Tompkins*, 783 F.3d 332, 347 n.9 (1st Cir. 2015); *Morin v. Leahy*, 189 F. Supp. 3d 226, 233 (D. Mass. 2016), *aff'd*, 862 F.3d 123 (1st Cir. 2017). Whatever place a two-part approach may have when evaluating a regulation rather than the prohibitions at issue in this case, *see e.g.*, *Gould v. O'Leary*, Case No. 16-10181, 2017 WL 6028342 at *12 (D. Mass. Dec. 5, 2017) (applying two-part approach to uphold "may issue" standard for permitting carry of firearms outside the home), it is simply inapposite here. As *Heller* made clear, once a determination is made using text and history that a class of arms is protected under the Second Amendment, there is no point in determining what level of scrutiny applies, because a ban on common firearms can survive no level of heightened scrutiny traditionally applied to enumerated rights. *Heller*, 554 U.S. at 628. A prohibition is neither the "least restrictive alternative" required under strict scrutiny nor the "narrowly tailored" law required under intermediate scrutiny because a ban is not "tailored" at all. This Court should analyze the Challenged Laws just as the ban was reviewed in *Heller* without resorting to any balancing test whatsoever.

## C. Even if the Court Adopts the Two-Part Approach, the Challenged Laws Are Still Unconstitutional.

### 1. The Banned Firearms and Magazines Are Protected by the Second Amendment.

While the Court's analysis may change if it chooses to adopt the two-part approach, an essential fact will remain unchanged: The Banned Firearms and Magazines are protected by the Second Amendment. Millions of Americans keep semiautomatic rifles with magazines exceeding ten rounds, and use them for lawful activities, including as a means to defend their homes. *See* SUF at pp. 12–13, ¶¶ 30–32; pp. 13–14, ¶¶ 35–37. If a weapon is one "typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, then it cannot also be a "dangerous

and unusual" weapon. *Id.* at 627. Thus, "the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Caetano*, 136 S. Ct. at 1031 (Alito, J., concurring).

Even though *Heller* recognizes that "weapons that are most useful in military service – M-16 rifles and the like – may be banned," *Heller*, 554 U.S. at 627, the Supreme Court already has expressly distinguished the traditionally regulated, fully-automatic M-16 from the semiautomatic AR-15 because the latter is "the civilian version of the military's M-16 rifle" that is among those firearms that "traditionally have been widely accepted as lawful possessions." *Staples*, 511 U.S. at 603, 612. Simply put, if the firearms in question are commonly possessed for lawful purposes, they fall within the ambit of the Second Amendment. *See Heller*, 554 U.S. at 625, 627.

> **2.  The Only Appropriate Level of Heightened Scrutiny Is Strict Scrutiny, and the Challenged Laws Fail Strict Scrutiny Because They Are Not Narrowly Tailored to a Compelling State Interest.**

Even in those jurisdictions that have adopted the two-part test, courts have acknowledged that "a law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016). The Challenged Laws and Notice of Enforcement severely impact the core right of the Second Amendment even if other firearms, such as handguns, are still available to Plaintiffs for self-defense. The Supreme Court rejected that argument in *Heller*. 554 U.S. at 629 ("It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed."). Because the Challenged Laws completely restrict – and do not merely regulate – the Plaintiffs' possession of the Banned Firearms and Magazines for lawful purposes, regardless of the level of scrutiny, the Challenged Laws are unconstitutional.

If this Court opts to apply some form of means-end analysis, the only appropriate level of heightened scrutiny is strict scrutiny. When a law interferes with "fundamental constitutional rights," it is generally subject to strict scrutiny. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973). This is especially so in this instance, because the Challenged Laws limit the right to bear arms for self-defense inside the home, where the protection afforded by the Second Amendment is at its greatest. *See, e.g. Nat'l Rifle Ass'n of Am., Inc.*, 700 F.3d at 205; *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) ("[W]e find the application of strict scrutiny important to protect the core right of the self-defense of a law-abiding citizen in his home . . . ."); *but see Kolbe*, 849 F.3d at 121 (failing to follow its prior statements in *Masciandaro* and other cases and upholding Maryland firearm bans under intermediate scrutiny).[2]

The First Circuit has not examined extensively the standard of review to apply in cases involving prohibitions impacting Second Amendment rights. In those cases where the First Circuit appears to have applied some form of means-end scrutiny, no particular level of heightened scrutiny has been uniformly or expressly adopted. *See Morin,* 189 F. Supp. 3d at 233. Rather, the level of scrutiny has differed based on the nature of the conduct that is burdened by the challenged law, and the extent of that burden: "The more significantly the law burdens a person's Second Amendment rights, the more stringent the review." *Id*. This Court has thrice indicated that any law

---

[2] Several Circuit Courts have approved of the application of intermediate scrutiny when analyzing bans on the possession and use of similar, protected firearms and large capacity magazines, and/or have refused to enjoin or strike down these bans. *See, e.g.*, *Kolbe*, 849 F.3d at 139; *Fyock*, 779 F.3d at 998-99; *Cuomo*, 804 F. 3d at 260-61, 269; *Heller II*, 670 F.3d at 1261–62. The Seventh Circuit also approved a ban, not under a two-part approach, but under an analysis akin to that used by the Supreme Judicial Court of Massachusetts in *Caetano*. *Friedman*, 784 F.3d at 410. These Courts, respectfully, were incorrect, and should have stricken the bans as unconstitutional as was done by the Supreme Court in *Heller* and *McDonald*. *See Heller*, 554 U.S. at 629, 636; *McDonald*, 561 U.S. at 791.

burdening an interest more central to the Second Amendment would be subject to strict scrutiny,[3] and this case presents such a situation.

The Challenged Laws amount to a complete prohibition on Plaintiffs' ability to possess common firearms in their homes for self-defense, severely burdening the core right and thus mandating strict scrutiny. To satisfy the demanding strict scrutiny standard, Defendants must establish that the Challenged Laws are narrowly tailored to promote a compelling government interest. *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 813 (2000); *see also Rideout v. Gardner*, 838 F.3d 65, 70 (1st Cir. 2016). If a less restrictive alternative would serve the Defendants' purpose, they must use that alternative. *See Playboy*, 529 U.S. at 816; *Gardner,* 838 F.3d at 72. Furthermore, a court applying strict scrutiny must presume the law is invalid, and "[Defendants] bear[] the burden to rebut that presumption." *Playboy,* 529 U.S. at 817.

In the present case, the Challenged Laws as interpreted by the Notice of Enforcement are neither narrowly tailored to a compelling interest nor the least restrictive means to achieving that interest. *See* SUF at pp. 1–2, ¶¶ 1–3; p. 3, ¶¶ 5–6; p. 4, ¶¶ 8–10; pp. 6–8, ¶¶ 19–22; p. 21–23, ¶¶ 62–67. To the contrary, their broad sweep encompasses the most popular semiautomatic rifles and standard magazines and denies them to responsible, law-abiding citizens for use in the home. The Challenged Laws cannot survive strict scrutiny.

---

[3] *Gould v. O'Leary*, Case No. 16-10181, 2017 WL 6028342 at *12 (D. Mass. Dec. 5, 2017) (holding that because the interest in carrying a firearm outside of the home "is not at the 'core' of the Second Amendment right recognized in *Heller*, analysis at a level of scrutiny lower than the strict scrutiny standard appears to be appropriate"); *Batty v. Albertelli,* Case No. 15-10238, 2017 WL 740989, at *10 (D. Mass. Feb. 24, 2017) (declaring that strict scrutiny is appropriate when the interest is "at the 'core' of the Second Amendment"); *Fletcher v. Haas*, 851 F. Supp. 2d 287, 303 (D. Mass. 2012) (declaring "any law that would burden the 'fundamental' core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny").

###### 3.   Alternatively, the Challenged Laws Fail Even Intermediate Scrutiny for Lack of Fit with Any Government Interest.

Even if this Court applied intermediate scrutiny, the Challenged Laws do not pass muster. Intermediate scrutiny requires that a law impacting fundamental rights be narrowly tailored to serve a substantial government interest. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994); *Heller II*, 670 F.3d at 1258; *see also Rideout*, 838 F.3d at 71–72 (applying intermediate scrutiny to content-neutral regulations on speech).

While narrow tailoring of a prohibition on protected arms in the intermediate scrutiny context does not require a law to be the least restrictive means of accomplishing the asserted interest, it does require that the law be a "tight" or "close" fit to an important or substantial government interest. *Heller II*, 670 F.3d at 1258; *see also Rideout*, 838 F.3d at 74 ("[B]y demanding a close fit between ends and means, the tailoring requirement [under intermediate scrutiny] prevents the government from too readily 'sacrific[ing] speech for efficiency.'" (citing *McCullen*, 134 S. Ct. at 2534)). Part of the determination of whether a law is properly tailored requires the consideration of less restrictive alternatives. *McCullen*, 134 S. Ct. at 2540. The rationale behind this requirement is that if there is a less restrictive alternative that would accomplish the government's asserted interests, then the fit between the challenged law and the interest is likely not sufficiently "tight." *Id.* at 2534-41.

The record in this case does not support a "close fit," *Rideout*, 838 F.3d at 74, between the Challenged Laws and any substantial government interest. *See* SUF at pp. 21–23, ¶¶ 62–67. Whatever the government's concern about potential criminal misuse of the Banned Firearms and Magazines, the Challenged Laws fail to provide exceptions for the acquisition and possession of the Banned Firearms and Magazines by law-abiding, responsible citizens who wish to use the

14

Banned Firearms and Magazines for lawful purposes, including self-defense in the home. *See Rene E.*, 583 F.3d at 14, 16 (holding that ban of juvenile possession of firearms "does not offend the Second Amendment," because it had "important exceptions" permitting possession for hunting, national guard duty, and self-defense in the home). Furthermore, Defendants have not asserted a substantial interest that would justify depriving "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635; *see also* SUF at p. 22, ¶ 64.

Defendants cannot carry their burden even under intermediate scrutiny. As a result, the Challenged Laws should be held unconstitutional under the Second Amendment.

## II.   The Challenged Laws Deny Plaintiffs' Rights to Due Process Under the Fourteenth Amendment.

### A. The Notice of Enforcement Interprets the Challenged Laws to Criminalize Retroactively Prior Transactions of Firearms and Magazines That Were Lawful at the Time They Occurred, Denying Plaintiffs Due Process of Law.

Retroactive enlargement of a statute "operates precisely like an ex post facto law" forbidden by Article I, Section 10 of the Constitution because it criminalizes conduct that was innocent when committed. *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). Legislatures, courts, and administrative agencies alike are thus barred from announcing "retroactive criminal prohibitions" that are unexpected in light of established law. *Id.* at 354; *see also Rogers v. Tenn.*, 532 U.S. 451, 462-63 (2001); *United States v. Hussein*, 351 F.3d 9, 14-15 (1st Cir. 2003); *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996). When a subsequent interpretation of a statute has no support in prior interpretations of the statute, the retroactive application may violate due process and fair notice principles, particularly where constitutional rights are implicated. *See Rogers*, 532 U.S. at 457-58 (citing *Bouie*, 378 U.S. at 356); *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012) (finding that FCC's abrupt change of interpretation of a statute prohibiting conduct

deprived networks of adequate notice, particularly because the regulations touched on basic First Amendment freedoms); *United States v. Lanier*, 520 U.S. 259, 266 (1997).

As a result, the due process concepts of notice, foreseeability, and the right to fair warning bear on the constitutionality of attaching criminal penalties to previously innocent conduct. *Rogers*, 532 U.S. at 456-60 (citing *Bouie*, 378 U.S. at 351, 352, 354-55). Here, Plaintiffs had no notice or fair warning that their possession or transfers of the Massachusetts Compliant Firearms would be deemed criminal, especially because tens of thousands of Massachusetts Compliant Firearms were lawfully sold from 1998 up until the effective date of the Notice of Enforcement. *See* SUF at p. 3, ¶ 7, pp. 10–11, ¶¶ 24–25, pp. 23–24, ¶ 69. Defendants approved the sale of tens of thousands of Massachusetts Compliant Firearms by processing transfer applications and inspecting the records of licensed firearms dealers without questioning or objecting to the transfers. *Id.* at p. 3, ¶ 7, p. 23–24, ¶¶ 69–71. By processing the transfer applications for almost twenty years, Defendants established that Massachusetts Compliant Firearms were legal under the Challenged Laws, and narrowly construed the phrase "copies or duplicates" to exclude Massachusetts Compliant Firearms. *Id.* at pp. 23–24, ¶ 69–72. Plaintiffs justifiably relied upon Defendants' confirmation of the transfers to ensure that the firearms they bought and sold were compliant with Massachusetts law, and that they were not committing any crimes by participating in transactions involving Massachusetts Compliant Firearms. *Id.* at pp. 9–11, ¶¶ 24–25; p. 24, ¶ 72. It was not until the issuance of the Notice of Enforcement that Plaintiffs became aware that they could be prosecuted under both state and federal law for their transfer and possession of the Massachusetts Compliant Firearms. *Id.* at pp. 23–25, ¶¶ 69–76.

The change in interpretation of the Challenged Laws was further unforeseeable because the laws themselves do not provide a basis for the "guidance" set forth in the Notice of

Enforcement. The legislative history for the Federal Ban on which the Challenged Laws are based demonstrates that the term "copies and duplicates" was meant to have a very narrow reading. *Id.* at p. 2, ¶ 4. Defendant Healey's retroactive interpretation of the Massachusetts law is thus "a substantial change in its enforcement policy that was not reasonably communicated to the public," *Upton*, 75 F.3d at 97, at the time the transactions were occurring. Because this lack of notice and fair warning retroactively subjects Plaintiffs to criminal penalties without the due process afforded to them under the Constitution, the Notice of Enforcement should be declared unconstitutional.

### B. The Notice of Enforcement Demonstrates the Phrase "Copies or Duplicates" as Used in the Challenged Laws Is Unconstitutionally Vague.

A criminal law may violate due process under the Fourteenth Amendment if it does not explicitly inform the public what conduct may "render [it] liable to its penalties," *Bouie,* 378 U.S. at 351, or if the law's "prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A vague law that impermissibly delegates basic policy matters to government officials for resolution on an ad hoc and subjective basis deprives citizens of due process because it presents opportunity for arbitrary and discriminatory application. *Grayned,* 408 U.S. at 109. A criminal law is unconstitutionally vague if (1) it fails to provide sufficient notice for an ordinary person to understand what conduct is prohibited, or (2) it authorizes or encourages arbitrary enforcement. *Chicago v. Morales*, 527 U.S. 41, 56 (1999); *U.S. v. Nieves-Castaño*, 480 F.3d 597, 604 (1st Cir. 2007).

Here, the Challenged Laws are unconstitutionally vague on both grounds. The phrase "copies or duplicates" of the Enumerated Banned Firearms is not defined by the Challenged Laws or any other statute, depriving citizens of ordinary intelligence of notice as to what firearms are prohibited. *See* SUF at p. 2, ¶ 3; p. 25, ¶ 77. The Notice of Enforcement does not cure the vagueness problem inherent in the Challenged Laws, but rather demonstrates that the Challenged Laws

17

authorize arbitrary and subjective enforcement. *See id.* at pp. 3–4, ¶¶ 7–10; pp. 25–30, ¶¶ 77–89. From 1998 to July 20, 2016, Defendants enforced an interpretation of the Challenged Laws that excluded Massachusetts Compliant Firearms from the definition of "copies or duplicates," but now, in applying the Notice of Enforcement, enforce an interpretation of the Challenged Laws that include the Massachusetts Compliant Firearms in the definition of "copies or duplicates." *see id.* at pp. 3–4, ¶ 7; p. 26, ¶¶ 78–79. By enforcing conflicting interpretations of the laws and criminalizing vastly different scopes of conduct, Defendants have exposed citizens to potential criminal penalties without constitutionally sufficient notice.

Further compounding the vagueness problem is that the Notice of Enforcement indicates that the two tests set forth by Defendant Healey are not exclusive of other tests that could be applied. *Id.* at p. 4–5, ¶¶ 11–13; pp. 28–29, ¶¶ 87-88. For instance, the Notice of Enforcement also states that a manufacturer's advertising of a firearm is "relevant'" to determining whether it is a "copy or duplicate," but provides no explanation as to how to apply such a standard. *Id.* at p. 5, ¶ 13; p. 29, ¶ 87. In addition, the Notice of Enforcement provides that a firearm that qualifies as a "copy or duplicate" under one of the two tests will remain a "copy or duplicate," even if it is altered to no longer meet those tests. *Id.* at p. 5, ¶ 12; p. 29, ¶ 88. Because the current configuration of a firearm cannot be relied upon, the citizen must somehow determine all prior configurations. *Id*. Plaintiffs thus face criminal liability due to prior configurations of firearms they possess, even if they are unaware of the alterations – a result the Supreme Court has previously rejected. *See Staples*, 511 U.S. at 619. All this makes it impossible for citizens, *id.* at pp. 6–8, ¶¶ 19–20; pp. 8-9, ¶ 22, firearms dealers, *id.* at pp. 10–11, ¶¶ 24–25, and even Defendants and their "expert" in firearms, *id.* at p. 26, ¶ 81, pp. 28–29, ¶ 86, to determine whether a firearm is prohibited as a "copy

or duplicate." Naturally, Plaintiffs and other citizens are uncertain whether possession of their firearms is lawful. *See id.* at pp. 6–8, ¶¶ 19–20, 22; pp. 10-11, ¶¶ 24–25; p. 29–30, ¶ 89.

Providing such discretion to Defendants to determine whether a firearm possessed by a Plaintiff is a "copy or duplicate" authorizes arbitrary and subjective enforcement, and thus renders the Challenged Laws unconstitutionally vague. *See Kolender v. Lawson*, 461 U.S. 352, 360 (1983) (holding statute to be unconstitutionally vague for lacking adequate standards for determining whether an individual has complied with a statute and vesting complete discretion with law enforcement to interpret undefined phrase). Most troubling, by imposing criminal penalties for vague, undefined conduct, the Challenged Laws threaten to chill the exercise of Plaintiffs' Second Amendment Rights – precisely what the vagueness doctrine prohibits. *See Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011). Given the fundamental constitutional rights at stake, the Challenged Laws must be treated with the least amount of tolerance, and the most stringent of vagueness standards must apply. *See id.*; *see also Morales*, 527 U.S. at 55. It necessarily follows that the Challenged Laws as drafted and as interpreted by the Notice of Enforcement must be declared unconstitutionally vague to the extent they include "copies or duplicates" of the Enumerated Banned Firearms.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to grant their Motion for Summary Judgment, declare the Challenged Laws and Notice of Enforcement unconstitutional under the Second and Fourteenth Amendment to the Constitution, and enjoin Defendants from enforcing those laws.

Dated: December 15, 2017

Respectfully submitted,

/s/ James M. Campbell
James M. Campbell (BBO#541882)
Richard P. Campbell (BBO # 071600)
Campbell Edwards & Conroy
One Constitution Center
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com

/s/ John Parker Sweeney
John Parker Sweeney (admitted *Pro Hac Vice*)
T. Sky Woodward (admitted *Pro Hac Vice*)
James W. Porter, III (admitted *Pro Hac Vice*)
Marc A. Nardone (admitted *Pro Hac Vice*)
Connor M. Blair (admitted *Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
jsweeney@bradley.com


*Counsel for Plaintiffs David Seth Worman, Anthony Linden, Jason William Sawyer, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2017, that Plaintiffs' Memorandum of Law in Support of Their Summary Judgment was served, on Defendants' counsel via CM/ECF system that will forward copies to Counsel of Record.

/s/ James M. Campbell
James M. Campbell (BBO#541882)
Richard P. Campbell (BBO # 071600)
Campbell Edwards & Conroy
One Constitution Center
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com

/s/ John Parker Sweeney
John Parker Sweeney (admitted *Pro Hac Vice*)
T. Sky Woodward (admitted *Pro Hac Vice*)
James W. Porter, III (admitted *Pro Hac Vice*)
Marc A. Nardone (admitted *Pro Hac Vice*)
Connor M. Blair (admitted *Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
jsweeney@bradley.com

*Counsel for Plaintiffs David Seth Worman, Anthony Linden, Jason William Sawyer, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost*