UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID SETH WORMAN, ANTHONY LINDEN, JASON WILLIAM SAWYER, PAUL NELSON CHAMBERLAIN, GUN OWNERS' ACTION LEAGUE, INC., ON TARGET TRAINING, INC., AND OVERWATCH OUTPOST,<br><br>*Plaintiffs*,<br><br>v.<br><br>MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts; DANIEL BENNETT, in his official capacity as the Secretary of the Executive Office of Public Safety and Security; and COLONEL KERRY GILPIN, in her official capacity as Superintendent of the Massachusetts State Police,<br><br>*Defendants*. | CIVIL ACTION<br>NO. 17-cv-10107-WGY |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

Plaintiffs seek to complicate the proceedings[1] on cross-motions for summary judgment in this matter by moving to strike declarations of two Massachusetts law enforcement officers, Chief Brian Kyes and Retired Chief Mark Leahy, as well as the declaration of a researcher on gun violence, Kristen Rand, on whose published report one of Plaintiffs' own experts expressly relied.[2]  (Doc. No. 68).  Plaintiffs assert that each declarant is an undisclosed expert under Fed. R. Civ. P. 26(a).

---

[1] Although Plaintiffs purport to seek relief under Fed. R. Civ. P. 37(c)(1), they failed to comply with Local Rule 37.1(a), which governs discovery disputes in this District.

[2] The challenged declarations are attached as Exhibits A–C for ease of reference.

1

The declarations at issue do not contain expert opinion. Rather, they provide non-expert factual material to impeach the opinions of Plaintiffs' experts. *See* pp. 3–6, *infra*. In addition, there is no element of surprise and therefore no harm because the challenged declarations include exactly the type of legislative facts that are routinely consulted in constitutional challenges to statutes. Similar material has been part of the record in other challenges to assault weapons bans in various jurisdictions, including in a Maryland case in which lead counsel here was counsel of record. *See* pp. 6–9, *infra*.

The Plaintiffs' Motion to Strike has no merit and should be denied.

## LEGAL STANDARD

Rule 26(a) requires disclosure of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Separately, a party must disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Rule 26(a)(2).

In the event that an undisclosed witness is being offered for a purpose other than impeachment, Fed. R. Civ. P. 37(c)(1) provides that a court may exclude or provide alternate sanctions for failure to make the required disclosures—unless the failure was substantially justified or is harmless. "[T]he procedural rule itself makes clear [that] in the absence of harm to a party, a district court may not invoke the severe exclusionary penalty provided for by Rule 37(c)(1)." *Cruz-Vazquez v. Mennonite General Hosp.*, 613 F.3d 54, 58 n. 1 (1st Cir. 2010). Preclusion is "not a strictly mechanical exercise." *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009). The appropriate sanction, if any, is within the broad discretion of the Court. *Laplace–Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002).

## ARGUMENT

### I. THE CHALLENGED DECLARATIONS PROVIDE FACTS NECESSARY TO IMPEACH THE OPINIONS OF PLAINTIFFS' EXPERTS.

The text of Rule 26(a) makes clear that parties need not disclose impeachment witnesses. The three challenged declarations here are of fact witnesses, not experts, offered to impeach expert opinion advanced by the Plaintiffs.

#### A. The Law Enforcement Declarations

As can be readily seen from the Declarations attached as Exhibits A and B, neither Chief Brian Kyes of the Chelsea Police Department or Retired Chief Mark Leahy of the Massachusetts Chiefs of Police Association offer expert evidence about assault weapons or large capacity feeding devices. Rather, these law enforcement officers offer factual evidence, based on their personal experience as police chiefs, about law enforcement practices in Massachusetts.

Although Chief Kyes' declaration demonstrates some incontrovertible knowledge about the qualities and uses of banned weapons (e.g., ¶¶ 11, 13), those averments represent little more than the standard awareness of the capacity of assault weapons that is not disputed in this matter. *See* Kaplan Decl. Ex. 39 (Doc. No. 65–10), at 2–1, Table 2–1 (listing maximum range and maximum effective range of M16 and other related weapons); Kaplan Decl. Ex. 11 (Supica Dep.) (Doc. No. 65–1), at 87:16 – 88:16. The heart of Chief Kyes' declaration is factual information about law enforcement practices, and about policies and priorities in his jurisdiction. His averments include, for example, that Chelsea police do not currently deploy assault weapons on patrol (¶ 19), his concerns about risk of theft of assault weapons owned by law abiding citizens for criminal uses (¶¶ 21–22), the type of body armor the Chelsea police typically uses (and its inability to stop rounds fired by assault weapons) (¶¶ 23–24), and law enforcement concerns in Chelsea about responding to incidents involving criminal use of assault weapons

(¶¶ 14–18). Similarly, his statement that the Massachusetts Major City Police Chiefs Association supports the assault weapons ban (¶ 20) is not an expert opinion.

Chief Leahy's declaration is of a similar nature. It offers factual evidence about the use of banned weapons by Massachusetts law enforcement officers (¶¶ 15–16, 18, 23),[3] law enforcement training protocols (¶ 17), and that law enforcement duty weapons across Massachusetts are handguns (¶ 20).

The facts offered are admissible as lay testimony within the scope of Fed. R. Evid. 701 and not expert opinion.[4] *See United States v. Valdivia*, 680 F.3d 33, 50–51 (1st Cir. 2012) (law enforcement officer's personal experiences form the basis for lay, rather than expert opinion). Moreover, there is no jury in the context of a summary judgment motion to be confused by the distinction between lay and expert evidence.[5]

Chief Kyes and Leahy's declarations are necessary to impeach Plaintiffs' experts, who opined that the use of banned weapons and magazines by Massachusetts' law enforcement

---

[3] Law enforcement ownership of banned weapons is specifically authorized by G.L. c. 140, § 131M.

[4] Rule 701 governing opinion testimony by lay witnesses provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> 
> (a) rationally based on the witness's perception;
> 
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> 
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[5] The concerns that animate much of the case law in this area have to do with fairness at trial. *E.g.*, *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998) (reviewing use of previously undisclosed evidence at trial). The First Circuit has explained that exclusion is not required if there is an opportunity to remedy the failure to disclose before trial. *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 305 (1st Cir. 1999).

officers justifies use of the same weapons and magazines by civilians. *See* Plaintiffs' Statement of Material Facts (Doc. No. 59), ¶¶ 47–48, 52.  For example, Plaintiffs rely on Dr. Gary Roberts, who opined that "private citizens who wish to own a firearm for self- and home defense should use a semiautomatic rifle—most likely the same firearm and ammunition chosen by police in their community." *Id.* ¶ 48. *See also* Kaplan Decl. Ex. 13 (Boone Dep.) (Doc. No. 65–1), at 103:1-12.  In a similar vein, Plaintiffs' expert Buford Boone, a resident of Alabama, testified that in his opinion "law enforcement executives typically have very little understanding of . . . appropriate firearms for law enforcement purposes." Kaplan Decl. Ex. 13 (Boone Dep.) (Doc. No. 65–1), at 110:18 – 111:8. *See also* Kaplan Decl. Ex. 14 (Rossi Dep.) (Doc. No. 65–1), at 113:13 – 117:5 (frequency of police incidents involving ten shots being fired or more).

Chiefs Kyes and Leahy are Massachusetts law enforcement executives who have long participated in statewide law enforcement associations.  For purposes of impeachment, their declarations make clear that Massachusetts law enforcement officers do understand appropriate firearms for law enforcement purposes; that Massachusetts law enforcement agencies have a convincing basis in community policing needs to restrict even a law enforcement officer's use of assault weapons and the number of shots fired; and that Massachusetts law enforcement agencies have serious, well founded public safety concerns about civilians accessing the same high-powered semiautomatic rifles that are used, on a restricted basis, by law enforcement officers in Massachusetts.[6]

---

[6] Plaintiffs do not explain why they consider Chief Kyes and Leahy's declarations to offer expert opinion, other than to point to paragraphs that appear to be based on the declarants' personal experiences in law enforcement.  *See* Mem. in support of Plaintiffs' Motion to Strike (Doc. No. 69), p. 6.  Plaintiffs' argument that the Chiefs assert their credentials in their declarations as an expert is unavailing.  *Id.*  Their credentials are equally necessary to establish the basis for their lay evidence.

### B. The Declaration of Kristen Rand

Declarant Kristen Rand is employed by the Violence Policy Center (VPC). Her declaration addresses the methodologies that the VPC used to identify mass shootings in which the shooter used a Large Capacity Magazine. The Rand declaration (Exhibit C) is not offered to establish the scientific validity of those methodologies, which are not in dispute, but rather to impeach Plaintiffs' expert Gary Kleck, who claims to have relied on the VPC's work to reach scientifically viable conclusions about the number of mass shootings that involve large capacity magazines. *See* Kaplan Decl. Ex. 12 (Kleck Dep.) (Doc. No. 65–1), at 34:18 – 39:12.

The Rand declaration makes clear that Professor Kleck ignores much of the VPC data he claims to rely on by adopting a restrictive definition of mass shooting that is at odds with the one used by the VPC, the FBI, and Congress (¶ 4). It also describes the VPC's methodologies for studying use of large capacity magazines in mass shootings (¶¶ 6–16), without asserting their scientific validity. To rebut Professor Kleck's misuse of the VPC's work, Rand's declaration states that the VPC used publicly available information in media reports to identify mass shootings (under the congressional definition) involving magazines with a capacity of more than ten rounds (¶¶ 3–4), that it found shootings under these criteria in which 597 people were killed and 1020 were wounded (¶ 5), and that in light of the methodologies used, the VPC considers this a significant undercount (¶ 17).

## II. NON-DISCLOSURE WAS INADVERTENT AND SUBSTANTIALLY JUSTIFIED, AND PLAINTIFFS SUFFER NO HARM.

Even if the Court concludes that the declarations at issue include some expert testimony that required disclosure under Rule 26(a)(2) or that they are declarations of undisclosed fact witnesses that go beyond impeachment, exclusion of the declarations under Rule 37(c)(1) is not the appropriate remedy. Failure to disclose was inadvertent and based on a good faith belief that

the witnesses' testimony is impeachment evidence.  Expert discovery did not close until

November 15, 2017, and summary judgment papers were due just a month later, on December

15, 2017.  Development of rebuttal witnesses for the purposes of impeachment of Plaintiffs'

experts thus occurred simultaneously with preparation of a motion for summary judgment.  To

the extent disclosure of rebuttal witnesses was required, it was inadvertently overlooked.

Plaintiffs rely principally on *Harriman v. Hancock County*, 627 F.3d 22 (1st Cir. 2010),[7]

a civil rights case involving the death of a prisoner in custody.  In that case, the issue was

exclusion of evidence provided by undisclosed eyewitnesses who had been identified by counsel

two or three years before summary judgment.  In the circumstances, the evidence presented (at

trial) was unique to the Declarants as eyewitnesses to the specific incident that was the subject of

the case itself.

In contrast, the issue before this Court is a constitutional challenge to the

Commonwealth's assault weapons ban.  Plaintiffs' complaint does not mention law enforcement

practices as relevant to their claims, but plaintiffs nevertheless inserted those practices by

offering expert opinion on such practices by two individuals, Special Agent Boone and Officer

Rossi.  Similarly, Defendants could not have known that Plaintiffs would misstate the findings of

the VPC study of large capacity magazines in mass shootings until they obtained testimony from

Professor Kleck, another of Plaintiffs' experts.  In short, there is a big difference between failure

---

[7] *Harriman* is clear that courts have discretion on appropriate sanctions for failure to disclose and that many factors are relevant to the appropriate outcome.  *Harriman*, 627 F.3d at 30.  It does not establish that exclusion is mandatory, as Plaintiffs assert.  *See* Mem. in support of Plaintiffs' Motion to Strike (Doc. No. 69), p. 1.  The correct standard is set out in *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009), and *Laplace–Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir. 2002) ("[D]istrict courts have broad discretion in meting out . . . sanctions for Rule 26 violations.").

to disclose known eyewitnesses and failure to anticipate the need for evidence from witnesses on issues first raised by the opposing parties' experts.

In addition, Plaintiffs suffer no harm from the asserted failure to disclose. The challenged declarations provide information that functions as legislative facts for the purpose of adjudicating the constitutionality of a statute on summary judgment. *See Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d 1, 7 (1st Cir. 2012) (on summary judgment, "issues presented are . . . legal in character" but informed by legislative facts "bearing upon the rationality or adequacy of distinctions drawn by statutes"). Unlike adjudicative facts, legislative facts "usually are not proved through trial evidence but rather by material set forth in the briefs." *Id*. "Such information is normally noticed by courts with the assistance of briefs, records and common knowledge." *Id*. (quoting *Daggett*, 172 F.3d at 112); *see also IMS Health, Inc. v. Ayotte*, 550 F.3d 42, 55 (1st Cir. 2008) ("state need not go beyond the demands of common sense to show that a statute promises directly to advance an identified governmental interest") (internal quotation marks omitted).

The two law enforcement declarants offer information that is consistent with a public safety justification for the statutes. The Rand declaration clarifies the methodologies of a study that establishes a basis for the legislative belief that large capacity magazines are commonly used in mass shootings. Similar evidence concerning the purpose of the ban was offered and admitted, over similar objections, in the Maryland case in which lead counsel here represented the plaintiffs. *See Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 780–81 (D. Md. 2014), *aff'd sub nom. Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) (en banc), *cert. denied*, 2017 WL 3173130 (Nov. 27, 2017) (motion to exclude law enforcement and other declarations denied over similar objections). *See also Shew v. Malloy*, 994 F. Supp. 2d 234, 249, n. 53 (D. Conn. 2014), *aff'd in*

*relevant part sub nom.*, *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2486 (2016) (relying on testimony of Connecticut law enforcement officers for the point that magazine changes allow officers to respond to shootings while the shooter is not firing at them).

Finally, Plaintiffs themselves rely on undisclosed expert evidence in their summary judgment papers. Each of their experts has submitted a declaration containing many paragraphs of additional opinion (in the form of supplemental declarations from their experts) which had not previously been disclosed pursuant to Rule 26(a)(2). *See* Exhibits 8–13 to Plaintiffs' Statement of Material Facts (Doc. Nos. 59–8 to 59–13). Although Defendants do not intend to seek to strike these additional opinions at this time, it bears mention that Plaintiffs have themselves created a summary judgment record that includes previously undisclosed evidence.

## CONCLUSION

For the foregoing reasons, the challenged declarations should not be stricken and no other sanction should be imposed.

Respectfully submitted,

MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts; DANIEL BENNETT, in his official capacity as Secretary of the Executive Office of Public Safety and Security; COLONEL KERRY GILPIN, in her official capacity as Superintendent of the Massachusetts State Police,

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Gary Klein
William W. Porter, BBO # 542207
Gary Klein, BBO # 560769
Julia E. Kobick, BBO # 680194
Elizabeth Kaplan, BBO # 568911
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2559

Date: January 3, 2018                julia.kobick@state.ma.us

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the Court's ECF, system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants by first-class mail on January 3, 2018.

/s/ Julia E. Kobick
Julia E. Kobick
Assistant Attorney General