

**The Commonwealth of Massachusetts**
**Executive Office of Public Safety and Security**
One Ashburton Place, Room 2133
Boston, Massachusetts 02108
Tel: (617) 727-7775
TTY Tel: (617) 727-6618
Fax: (617) 727-4764
www.mass.gov/eops

**CHARLES D. BAKER**
Governor

**KARYN E. POLITO**
Lt. Governor

**DANIEL BENNETT**
Secretary

July 26, 2016

BY HAND DELIVERY

The Honorable Maura Healey
Attorney General of the Commonwealth of Massachusetts
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108

Dear Attorney General Healey:

I write to seek clarification of the "Enforcement Notice" your office issued last week. There is a great deal of uncertainty as to which weapons you consider to be assault weapons. This uncertainty could easily lead to uneven application of the law across the Commonwealth, and it would be in the best interest of all involved to have additional clarity. Depending on how your office is interpreting the two-part test you have articulated for determining whether something is a "copy or duplicate" of a listed assault weapon, a large number of firearms, including pistols that have been sold here legally for decades, may be unintentionally affected.

The first part of the two-part test your office laid out—the "similarity test"—would deem a weapon an assault weapon "if its internal functional components are substantially similar in construction and configuration to those of an Enumerated Weapon." By way of example, the M1911 series of pistols manufactured for decades by Colt with essentially the same design since 1911, has similar characteristics to at least one of the specifically listed assault weapons, the SWD M-11. Does your enforcement notice mean that your office considers any weapon, even a pistol like the M1911 that has these characteristics to be an assault weapon?

Specifically, your office advises that assault weapons include any weapon that has "an operating system and firing mechanism . . . based on or otherwise substantially similar to" one of the assault weapons specifically listed in the statute. "Operating system" is undefined. Depending on the definition, it may be the case that most modern weapons, including many if not all semi-automatic pistols and rifles, including the M1911, have operating systems and firing mechanisms that are "based on or otherwise substantially similar" to assault weapons specifically listed in the statute. For instance, the SWD M-11, one of the weapons specifically banned by the statute, has a spring-loaded detachable magazine that pushes live rounds upward vertically; uses center-fire

EXHIBIT
32

AGO022116

cartridges; has a gas-powered semi-automatic action; and has an ejection port on the right-hand side of the weapon. So does the M1911 pistol.

The second part of the two-part test your office laid out—the "interchangeability test"—would deem a weapon an assault weapon "if it includes or accepts two or more operating components that are the same as or interchangeable with those of an Enumerated Weapon." The Notice then provides a non-exclusive list of things that could qualify as an "operating component." Modern manufacturing processes may have resulted in a significant number of weapons that have interchangeable parts, such as the ones on the non-exclusive list in the notice, but also including smaller components such as springs. Without access to and the ability to disassemble each of the weapons specifically listed as assault weapons, it may not be possible to determine how many operating components of a questioned weapon are interchangeable with corresponding components of one or more of the specifically listed weapons. As a result, given this second aspect of your Enforcement Notice, how could Massachusetts citizens (who already own these weapons, but are not experts in their design) understand the limits of your recently announced rule and appropriately conform their behavior?

Ensuring that firearms manufacturers do not evade our laws is a laudable goal, and I support that goal. However, the questions raised by your office's Enforcement Notice create significant uncertainty and practical issues for the public. I look forward to your office issuing additional guidance and clarifying information to address these questions.

Sincerely,

*Daniel Bennett*

Daniel Bennett
Secretary of Public Safety and Security