**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DAVID SETH WORMAN, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1-17-CV-10107-WGY** |
| | ) | |
| **MAURA HEALEY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE OPINIONS OF DEFENDANTS' EXPERTS
<u>CHRISTOPHER COLWELL, ROBERT SPITZER AND JAMES YURGEALITIS</u>**

Defendants rely upon the reports and affidavits of their proffered expert witnesses Christopher Colwell, Robert Spitzer, and James Yurgealitis in support of their Motion for Summary Judgment that include certain opinions that they are not qualified to give. Defendants' reliance on these opinions is improper, and pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26 and Local Rules 7.1 and 26.4(b)(1) and 56.1, Plaintiffs respectfully request that the Court strike from the record and preclude Defendants from relying upon the opinions in paragraphs 4–7 in Christopher Colwell's report and affidavit; paragraphs 4–6, 8–32, 36, 44, 51 and 53–59 in Robert Spitzer's report and paragraphs 3, 5–16, 19, 27, 32–35 and 37–39 in his affidavit; and paragraphs 23–59, 70–71, 76–80 and 82–87 in James Yurgealitis' report and affidavit.

Christopher Colwell is not qualified to provide testimony regarding ballistics and wound ballistics and choice of firearms in mass shootings in paragraphs 4–7 in his report and affidavit. Robert Spitzer is not qualified to provide testimony regarding self-defense, criminology, ballistics and wound ballistics, firearm mechanics, firearms history and marketing, and statutory

interpretation in paragraphs 4–6, 8–32, 36, 44, 51 and 53–59 in his report and paragraphs 3, 5–16, 19, 27, 32–35 and 37–39 in his affidavit. James Yurgealitis is not qualified to provide testimony regarding self-defense and hunting, firearms history, Massachusetts firearms laws, ballistics, and statutory and regulatory interpretation in paragraphs 23–59, 71, 76–80 and 82–87 in his report and affidavit. In addition, Robert Spitzer and James Yurgealitis impermissibly offer legal conclusions in paragraphs 4, 8–20 (Spitzer) and 71 (Yurgealitis) of their respective reports.

## ARGUMENT

An expert witness must be qualified to provide his opinions by virtue of his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Courts refuse to allow an expert to provide an opinion if the witness is not qualified to testify in that particular field or on that given subject. For instance, in *Bogosian v. Mercedes-Benz of North America. Inc*., 104 F.3d 472 (1st Cir. 1997), the Court of Appeals for the First Circuit affirmed the preclusion of a proffered expert from testifying with respect to an allegedly defective transmission. *Id*. at 477. The court ruled that, although the expert had extensive experience in automobile repair, he was not a mechanical engineer and lacked knowledge, skill, experience, training and education in design and manufacture of automobiles and their component parts. *Id*. Therefore, he was not qualified to provide opinions regarding component parts. *Id*.

This Court excludes expert opinions when the expert is not intimately familiar with the topic about which he speaks. *Sutera v. Perrier Group of America Inc.*, 986 F. Supp. 655, 667 (D. Mass. 1997); *see also Morse v. Ford Motor Co.*, No. 08-11930-RGS, 2010 WL 2733607, at *3 (D. Mass. July 9, 2010). Experience in an industry is not by itself enough to qualify an expert. *United States v. Monteiro*, 407 F. Supp. 2d 351, 373 (D. Mass. 2006). Further, an expert cannot rely exclusively on his own *ipse dixit*, *McGovern ex rel. McGovern v. Brigham & Women's Hosp*., 584

F. Supp. 2d 418, 426 (D. Mass. 2008), or "[s]omething asserted but not proved," *Black's Law Dictionary* 847 (8th ed. 2004). Instead, expert testimony must be based on reliable external sources, for instance "peer-reviewed publications supporting his opinion" to close the analytical gap between the data and the opinion. *McGovern*, 584 F. Supp. 2d at 425–26. Finally, experts may not testify to topics outside their stated expertise. *See, e.g.*, *Perez-Garcia v. Puerto Rico Ports Auth.*, 874 F. Supp. 2d 70, 73–74 (D.P.R. 2012).

Additionally, experts cannot opine on issues of law because doing so invades the province of the Court. *E.g.*, *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997). Further, this Court does not allow experts to interpret the applicability of statutes. In *U.S. ex rel. Dyer v. Raytheon Co.*, No. 08-cv-10341, 2013 WL 5348571 (D. Mass. Sept. 23, 2013), for instance, this Court held that "[o]pinions regarding the state of the law, interpretations of statutes or regulations, or the ultimate application of the facts to the law fall far outside the purview of expert testimony." *Id.* at *13 (excluding expert's legal conclusions). Finally, expert testimony offered "solely to establish the meaning of a law is presumptively improper." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. 12-cv-11280, 2016 WL 1170958, at *2 (D. Mass. Mar. 23, 2016) (citing *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (affirming exclusion of expert testimony about meaning of statutes and regulations because "[t]he only legal expert in a federal courtroom is the judge")).

Christopher Colwell, Robert Spitzer, and James Yurgealitis are not qualified to provide certain opinions contained in their respective reports and affidavits. Further, Robert Spitzer and James Yurgealitis offer legal opinions that are not admissible.

## I.     CHRISTOPHER COLWELL

Colwell's opinions on ballistics and wound ballistics as well as choice of firearms in mass shootings are not admissible because he is not qualified to offer opinions in those areas.

Colwell is an emergency room physician and his stated expertise is "treating victims of gunshot wounds." *See* Affidavit (Dkt. 61-7) and Expert Report (which are identical to each other and will be collectively referred to as "Report") (attached as <u>Exhibit A</u>), p. 1, ¶ 2. In his deposition, Colwell expressly denied that he is an expert in ballistics or wound ballistics (a subspecies of ballistics dealing with wounds caused by bullets). Colwell Dep. 46:19–47:11 (attached as <u>Exhibit B</u>). Further, he has never published a peer-reviewed article regarding gunshot wounds caused by a bullet fired from an assault weapon or any weapon, *id.* at 36:14–20 & 85:19–86:6, nor has he conducted a study on gunshot wounds, *id.* at 47:16–18, or even recorded or made notes regarding any characteristics of the gunshot wounds he has treated, *id.* 69:23–70:2. He has never provided a report (expert or otherwise) on the different kinds of wounds caused by different kinds of firearms. *Id.* at 82:1–9. Colwell has never offered expert testimony regarding the type of gun that was used in creating a gunshot wound he has treated. *Id.* at 62:6–12. In fact, Colwell cannot recall a situation where he identified a weapon (assault weapon or not) by examining a wound, *id* at 62:6–20, nor does he have the expertise to identify the type of weapon used even if he observes the bullet that caused the wound, *id.* at 66:20–67:3 & 70:3–6.

In unenumerated paragraphs 4–7 of his Report, Colwell offers opinions in ballistics and wound ballistics, areas in which he expressly denies he is an expert. *Id.* at 46:19–47:11. In one of those paragraphs, he opines that "injuries from weapons such as AR-15s and AK-47s tend to be higher in complexity with higher complication rates than those injuries from non-assault weapons. The assault weapons tend to cause far greater damage to the muscles, bones, soft tissue, and vital organs." Report, p. 2, ¶ 4. Paragraphs 5, 6 and 7 contain very similar testimony. Report, pp. 2–4, ¶¶ 5–7. Colwell cites no authorities to support these opinions. He has never listed patients he has treated for gunshot wounds, or made any notes or records of the characteristics of the wounds he

has observed. Colwell Dep. 69:19–70:2. To the extent Colwell has experience treating gunshot wounds suffered in two mass shooting incidents at Columbine High School and the Aurora Theater, the criminals in both incidents used firearms that are banned in Massachusetts as well as those that are not. *Id*, at 132:7–134:16 (Columbine); *id.* at 94:12–96:13 (Aurora). Critically, Colwell could not tell which type of firearms caused any of the wounds he treated in those incidents. *Id*. at131:20–132:6 (Columbine); *id*. at 93:19–23 (Aurora).

Colwell also opines on areas unambiguously outside of his stated area of expertise. He states in paragraph 7 of his Report that "[a]ssault weapons with large capacity magazines . . . are the weapons of choice in mass shootings." Nothing in Colwell's curriculum vitae indicates that he has any experience or knowledge relating to this assertion. Further, his Report cites no authorities to support this statement. *See* Colwell Dep. at 12:16–13:10 & 14:8–10.

As in the cases cited *supra*, Colwell lacks the qualifications, experience, and supporting authorities necessary to offer the opinions on ballistics, wound ballistics and choice of firearms in mass shootings in paragraphs 4-7 of his Report. Similar to the proffered expert in *Bogosian*, Colwell may have extensive experience treating gunshot wounds *generally*, but not in the precise areas of expertise (ballistics, wound ballistics, and weapons preferences of mass shooters) for which he advances his unsupported opinions. As detailed extensively above, he is not intimately familiar with these expert subjects. His education and experience do not qualify him as an expert in those areas. Moreover, without citing any authorities, he offers nothing but his uninformed *ipse dixit* to support these opinions, and they should be stricken.

## II.   ROBERT SPITZER

Spitzer's opinions on self-defense, criminology, ballistics and wound ballistics, firearm mechanics, firearms history and marketing, and statutory interpretation are not admissible because he is not qualified to offer opinions on these subjects. Further, Spitzer's statutory interpretation

opinion is not admissible because it is an impermissible legal conclusion.

### A. Spitzer is not qualified to offer his expert opinions.

Spitzer is a political science professor and his stated expertise is in the politics and history of gun control in America. Report, at p. 2, ¶ 2 & Aff., at p. 1, ¶ 2 ("My expertise includes the history of gun and ammunition laws, gun policy in American politics and related historical, legal, political, and criminological issues.") (Spitzer's report and affidavit (Dkt. 61-5) differ and are attached as <u>Exhibits C & D</u>, respectively).

Spitzer offers four opinions—none within in his stated or actual expertise. First, assault weapons and high capacity magazines provide no additional value if employed for self-defense. *See* Report, at pp. 2, 15–16, ¶¶ 7, 56–59; Aff., at pp. 10–11, ¶¶ 40–42. Second, assault weapons are particularly lethal and have a disproportionately large role in three types of criminal activity: mass shootings, police killings, and gang activity because of their design, firing characteristics, and appeal to segments of the criminal population. *See* Report, at pp. 2, 11–17, ¶¶ 6, 36, 44, 51, 53, 54–55, 60–62; Aff., at pp. 5, 7–9 ¶¶ 19, 27, 32–35, 37–39). Third, assault weapons were derived from military weapons designed specifically for combat use. *See* Report, at pp. 2, 7–9, ¶¶ 5, 21–32; Aff., at pp. 2–5, ¶¶ 3, 5–16. And fourth, the United States has a robust and lengthy history regulating semiautomatic weapons and magazine capacity. *See* Report, at pp. 2–9, ¶¶ 4, 8–20.

Spitzer is not qualified to offer these four opinions. First, regarding his opinion that the banned firearms provide no value added self-defense function or benefit, Spitzer expressly denies that he is an expert in firearms self-defense. Spitzer Dep., 30:23–25 (attached as <u>Exhibit E</u>). He has, moreover, virtually no familiarity with semiautomatic rifles (or any firearms) or their design or function—in theory or in practice. *Id*. at 30:2–8. Spitzer's entire education on and experience

with ballistics, firearms functioning, and self-defense consists of one 10-hour course on handgun use that he took as a requirement to earn a concealed carry permit in New York.[1] *E.g.*, *id*. at 30:17–19. Further, Spitzer has never fired a semiautomatic firearm, and he has fired a firearm of any kind—a revolver—exactly one time, during the concealed carry permit training course. *Id*. at 39: 13–41:9. Aside from this course, Spitzer has never witnessed anyone discharge a firearm. *Id*. at 41:10–18. His opinions in paragraphs 56–59 of his Report and paragraphs 40–42 of his Affidavit should be struck from the record.

Second, these same concessions prove that he is not qualified to testify that assault weapons are particularly lethal because of their design and firing characteristics. In addition to conceding that he is not familiar with design or firing characteristics of the banned firearms, *supra*, Spitzer expressly denies that he is either a ballistics expert or a wound ballistics expert. *Id*. at 31:1–5. Regarding his opinion that assault weapons are lethal because of their alleged appeal to segments of the criminal population and their use in certain crimes, Spitzer concedes that he is not a criminologist, Spitzer Dep. 28:10–11, has no education or experience in criminology, *id*. at 28:12–17, and is not an expert in criminology, *id*. at 29:18–19. Therefore, his opinions in paragraphs 6, 36, 44, 51, 53, 54–55 and 60–62 of his Report and paragraphs 19, 27, 32–35 and 37–39 of his Affidavit should be struck from the record.

Third, regarding his opinion that the banned firearms available on the civilian market today were derived from military weapons designed specifically for combat use, Spitzer concedes that he has no education or training in the history of firearms or their uses. *See id*. at 30:20–22 & 94:4–16. Further, he states he has done "little" research on this subject, as evidenced by his inability to

---

[1] He also testified that he helped a friend assemble the lower receiver of an AR-platform rifle. Spitzer Dep. 41:19–42:13. He never fired this weapon. *Id*. at 33:22–34:1 & 41:6–9. Nor has he received any training whatsoever on any semiautomatic firearm. *Id*. at 30:17–19.

name a single semiautomatic weapon that was not derived from a military weapon, though he states that "many, many variet[ies]" are. *Id*. at 30:20–22, 92:23–93:19 & 94:4–16. In any event, Spitzer's opinion is premised upon the marketing strategies of various firearms manufacturers. Report, at pp. 7–9, ¶¶ 24–31; Aff., at pp. 2–4, ¶¶ 8–15. But Spitzer denies being a marketing expert. Spitzer Dep. 117:21–118:5. Paragraphs 5 and 21–32 of his Report and paragraphs 3 and 5–16 of his Affidavit should be struck from the record.

Fourth, regarding his opinion that the United States has a robust history of regulating semiautomatic weapons and magazine capacity, Spitzer concedes that he is not a lawyer and has no legal education or training in either statutory interpretation or legal precedent. Spitzer Dep. at 88:4–14. Further, it is clear that Spitzer has very little understanding of these statutes, particularly the 1927 Massachusetts statute—he was uncertain if it even applied to semiautomatic firearms (it did not). *Id*. at 104:24–105:7, 112:14–114:2, 115:20–116:2. His opinions in paragraphs 4 and 8–20 of his Report should be struck from the record.

In sum, Spitzer, by his own admission, is not intimately familiar with these expert subjects. His education as well as his unrelated and lack of experience and training do not qualify him to offer his expert opinions, as his opinions could offer no assistance to the trier of fact, he is not an expert on those subjects on which he opines, and his opinions are not based on any of the usual indicia of reliability presumed for an expert's opinion to be admissible. In short, Spitzer is a "junk scientist," relying on "junk science" to offer a "junk opinion." *See McGovern*, 584 F. Supp. 2d at 424.

### B. Spitzer may not testify that previous statutes regulated semiautomatic weapons.

Spitzer impermissibly states that previous statutes and regulations from the 1920s and 1930s applied to ban and regulate certain semiautomatic weapons and magazines. Report, pp. 2–

7, ¶¶ 8–20. Similar to the excluded expert testimony in *Dyer*, Spitzer does more than simply restate the law, he interprets and applies facts to it.

Spitzer testified that the older statutes he interprets "establish[] a precedent for the right of states to engage in similar regulations today," Spitzer Dep. at 87:3–88:3, making clear that he intends to establish the meaning of these older statutes. This is plainly improper, *Bacchi*, 2016 WL 1170958, at *2, and the Court should strike Spitzer's opinions in paragraphs 4 and 8–20 of his Report for this second, independent reason.

## III.   JAMES YURGEALITIS

Yurgealitis' opinions on self-defense and hunting, firearms history, Massachusetts firearms laws, and statutory and regulatory interpretation are not admissible because he is not qualified to offer opinions on these subjects. Further, Yurgealitis' statutory and regulatory interpretation opinion is not admissible because it is an impermissible legal conclusion.

### A.  Yurgealitis is not qualified to offer his expert opinions.

Yurgealitis is a retired agent formerly with the Bureau of Alcohol, Tobacco, Firearms and Explosives and claims he has training and experience in firearms history, manufacture, operation and use. Report, at p. 1, ¶ 5; Aff., at p. 2, ¶ 5 (Yurgealitis' report and affidavit (Dkt. 61-6) differ only in page numbering and are attached as Exhibits F & G, respectively). Yurgealitis offers four opinions that this Court should strike. First, AR- and AK-platform rifles are poor choices for self-defense or hunting. Report, at pp. 34–37, ¶¶ 77–80, 82–87; Aff., at pp. 35–38, ¶¶ 77–80, 82–87. Second, he opines on the history of large capacity magazines as well as assault weapons, concluding that they derive from military-designed weapons. Report, pp. 15–28, ¶¶ 23–59; Aff., at pp. 16–29, ¶¶ 23–59. Third, the intent of the Challenged Laws was to address certain shared characteristics of firearms enumerated in G. L. c. 140 §§ 121, 131M (the "Challenged Laws") and their supposed copies and duplicates. Report, p. 34, ¶ 76; Aff., at pp. 35, ¶ 76. Fourth, after

Massachusetts enacted the Challenged Laws, firearms manufacturers illegally offered "Massachusetts Compliant" firearms. Report, p. 33, ¶ 71; Aff., at p. 34, ¶ 71.

Yurgealitis is not qualified to offer these four opinions. First, regarding his opinion that assault weapons are not suitable for self-defense, Yurgealitis has no self-defense expertise. He is not a certified self-defense instructor. Yurgealitis Dep. at 85:8–10 & 106:3–5 (attached as Exhibit H). He has never published anything regarding self-defense or given any presentations on the matter. *Id*. at 81:18–82:1. Similarly, Yurgealitis opines that semiautomatic weapons are not suitable or designed for hunting, but it does not appear that Yurgealitis has ever actually hunted or that he has any experience or special knowledge on the topic. *Id*. at 26:22–27:9. His opinions in paragraphs 77–80 and 82–87 in his report and affidavit should be struck from the record.

Second, regarding his opinions on the history of assault weapons and his opinion that they derive from military-designed weapons, Yurgealitis expressly disclaims being either a firearms expert or historian, stating "I'm not an expert, no. In other words, I'm not a firearms historian," *Id*. at 105:3–9. In this same vein, he has never provided a formal opinion or taught on firearms history. *Id*. at 106:3–15. He has only ever provided informal opinions regarding whether certain firearms are relics. *Id*. at 106:6–19. As such, his opinions in paragraphs 23–59 and 70 in his report and affidavit should be struck from the record. Yurgealitis also opines that the banned firearms and their copies and duplicates are designed to have interchangeable parts. Report, at pp. 22–27, ¶¶ 52–57. But Yurgealitis is not qualified to proffer this opinion as he is he is not a gunsmith, a firearms engineer, or a firearms designer; nor is he a ballistics expert. *Id*. at 100:1–9. Therefore, his opinions in paragraphs 52–57 in his report and affidavit should be struck from the record.

Third, regarding his opinion that the intent behind the Notice of Enforcement was to address certain shared characteristics of firearms enumerated in the Challenged Laws and their

supposed copies and duplicates, Yurgealitis again concedes candidly: "I'm not an expert in Massachusetts firearms legislation." *Id*. at 116:5–9. His opinions in paragraph 76 in his report and affidavit should be struck from the record. Additionally, offering an opinion for the purpose of resolving a legal issue is impermissible, as stated above and detailed below.

Fourth, regarding his opinion that after Massachusetts enacted the Challenged Laws, firearms manufacturers illegally offered "Massachusetts Compliant" firearms because a number of these firearms were actually a copy or a duplicate of a banned firearm (this is a legal conclusion, as discussed *infra*), Yurgealitis admits that he has never actually seen a firearm marked "Massachusetts Compliant firearm" except marketed on the internet. *Id*. at 197:17–198:9. He does not know how many manufacturers marketed these firearms, and he has not conducted any study related to this information or asked for such information. *Id*. 198:10–199:10. Yurgealitis further admits he has never made a formal determination as to whether a firearm is a copy or duplicate of another firearm. Although Yurgealitis has experience with the now-repealed federal weapons ban, that ban did not have a definition of copies and duplicates, nor did Yurgealitis ever see or work with any such definition. *Id*. at 192:19–193:1. Nor would Yurgealitis be qualified to make this determination. He has never provided guidance to any law enforcement officers regarding applications of the copies and duplicates language in the Notice of Enforcement. *Id*. at 205:17–22. Further, he is not a gunsmith, firearms engineer, or firearms designer; nor is he a ballistics expert or, perhaps most importantly, a lawyer. *Id*. at 100:1–9. His opinions in paragraph 71 in his report and affidavit should be struck from the record.

### B. Yurgealitis may not testify that certain weapons may be copies or duplicates of a banned firearm.

Yurgealitis offers an impermissible legal conclusion when he states that firearms manufacturers illegally marketed their firearms as being "Massachusetts Compliant" versions of

certain banned firearms because they were copies and duplicates of a banned firearm under the Challenged Laws. Report, at 33, ¶ 71, Aff., at 34, ¶ 71. Yurgealitis plainly applies facts to law and makes a legal determination—that firearms manufacturers violated Massachusetts law. This is not admissible expert testimony. *Dyer*, 2013 WL 5348571, at *13. Accordingly, the Court should exclude his opinions in paragraph 71 of the Report and Affidavit.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court grant their Motion to Strike Opinions of Defendants' Experts Christopher Colwell, Robert Spitzer, and James Yurgealitis in paragraphs 4–7 in Christopher Colwell's report and affidavit; paragraphs 4–6, 8–32, 36, 44, 51 and 53–59 in Robert Spitzer's report and paragraphs 3, 5–16, 19, 27, 32–35 and 37–39 in his affidavit; and paragraphs 23–59, 70–71, 76–80 and 82–87 in James Yurgealitis' report and affidavit.

Dated: January 5, 2018

Respectfully submitted,

/s/ James M. Campbell
James M. Campbell (BBO#541882)
Richard P. Campbell (BBO # 071600)
Campbell Edwards & Conroy
One Constitution Center
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com

/s/ John Parker Sweeney
John Parker Sweeney (admitted *Pro Hac Vice*)
T. Sky Woodward (admitted *Pro Hac Vice*)
James W. Porter, III (admitted *Pro Hac Vice*)
Marc A. Nardone (admitted *Pro Hac Vice*)
Connor M. Blair (admitted *Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350

Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
jsweeney@bradley.com

*Counsel for Plaintiffs David Seth Worman, Anthony Linden, Jason William Sawyer, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2018, that the foregoing was served on Defendants' counsel via CM/ECF system that will forward copies to Counsel of Record.

/s/ James M. Campbell
James M. Campbell (BBO#541882)
Richard P. Campbell (BBO # 071600)
Campbell Edwards & Conroy
One Constitution Center
Boston, MA 02129
(617) 241-3000
jmcambpell@campbell-trial-lawyers.com

/s/ John Parker Sweeney
John Parker Sweeney (admitted *Pro Hac Vice*)
T. Sky Woodward (admitted *Pro Hac Vice*)
James W. Porter, III (admitted *Pro Hac Vice*)
Marc A. Nardone (admitted *Pro Hac Vice*)
Connor M. Blair (admitted *Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
jsweeney@bradley.com

*Counsel for Plaintiffs David Seth Worman, Anthony Linden, Jason William Sawyer, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost*