**Michaela Dunne**
**August 30, 2017**

1

Volume 1, Pages 1-46

Exhibit: 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * *

DAVID SETH WORMAN, et al.,

Plaintiffs,

vs.

CHARLES D. BAKER, in his official

capacity as Governor of the

Commonwealth of Massachusetts, et al.,

Defendants

* * * * * * * * * * * * * * * * * *

Rule 30(b)(6) DEPOSITION OF EXECUTIVE OFFICE OF

PUBLIC SAFETY AND SECURITY (by Michaela Dunne) and

MICHAELA DUNNE, Individually

Wednesday, August 30, 2017, 1:06 p.m.

Campbell Campbell Edwards & Conroy

One Constitution Plaza, Third Floor

Charlestown, Massachusetts 02129


------- Alan H. Brock, RDR, CRR-------

C.J. Reporting

P.O. Box 1373

Andover, Massachusetts 01810

617.763.1725

**Michaela Dunne**
**August 30, 2017**

2

```
APPEARANCES:

     Bradley Arant Boult Cummings LLP

     Marc A. Nardone, Esq.

     John Parker Sweeney, Esq.

     1615 L Street, N.W., Suite 1350

     Washington, D.C. 20036

     202.719.8256

     mnardon@bradley.com

     jsweeney@bradley.com

     for Plaintiffs


     Campbell Campbell Edwards & Conroy

     Christopher R. Howe, Esq.

     One Constitution Plaza, Third Floor

     Charlestown, Massachusetts 02129

     617.241.3000  fax: 617.241.5115

     chowe@campbell-trial-lawyers

     for Plaintiffs
```

3

Office of the Attorney General

William W. Porter, Esq.

Gary Klein, Esq.

Assistant Attorneys General

One Ashburton Place

Boston, Massachusetts 02108

617.963.2959

bill.porter@state.ma.us

gary.klein@state.ma.us

for Defendants

**Michaela Dunne**
**August 30, 2017**

4

```
                    I N D E X



                  EXAMINATIONS

 MICHAELA DUNNE

        MR. NARDONE                            5



               EXHIBITS MARKED

 1          Deposition notice                      4



 Exhibits returned to Attorney Nardone
```

**Michaela Dunne**
**August 30, 2017**

17

```
 1   Commonwealth.  So it's simply stored in there for

 2   access by law enforcement.

 3       Q.   So law enforcement has access to that

 4   without going through you, necessarily?

 5       A.   Correct.

 6       Q.   When transaction data are sent to the

 7   Firearms Records Bureau, is there any review that is

 8   done when it is received to ensure either that it's

 9   complete or that it's accurate or that it's a lawful

10   transfer, anything like that?

11       A.   No.

12       Q.   So it is literally just taken and put into

13   the database.

14       A.   Correct.

15       Q.   Does the Firearms Records Bureau or any

16   other part of the EOPSS routinely audit the records?

17       A.   No.

18       Q.   If a prosecuting or investigating agency

19   were to request it from you, would you do that?

20       A.   Yes.

21       Q.   Are you able to sort the data to determine

22   whether or not there are certain number of, say,

23   handguns?

24       A.   Yes.
```

**Michaela Dunne**
**August 30, 2017**

18

```
 1        Q.   Are you able to do that with respect to

 2   assault weapons?

 3        A.   No.

 4        Q.   Why not?

 5        A.   The assault weapons -- so in Massachusetts

 6   there are a certain number of assault weapons that

 7   are enumerated in the statute.  So by that

 8   definition we would be able to look at the make and

 9   model and presume that those are assault weapons

10   just by the fact that they're enumerated in the

11   statute.  Any other firearm that could be considered

12   an assault weapon under the Federal assault weapons

13   definition we wouldn't be able to tell, because we'd

14   have to physically inspect the firearm.

15        Q.   Okay.  So it's fair to say that the records

16   that are kept by the Firearms Records Bureau slash

17   EOPSS wouldn't allow for a determination of the

18   number of assault weapons in Massachusetts.

19        A.   Correct.

20        Q.   Now, for when we have individual sales,

21   what data is transferred for that?

22        A.   The same data is transmitted as it would be

23   for a gun shop, except the buyer and seller, it

24   would be all of their information -- so the name,
```

35

```
1    have that would be responsive to this question.

2        Q.   If I could turn your attention to a copy of

3    the interrogatory responses, which are marked as

4    EOPSS No. 2, and if I could turn your attention to

5    Interrogatory Response No. 9.  This interrogatory

6    states, "Identify any person or persons responsible

7    for reviewing, processing, approving, and/or

8    maintaining records of Massachusetts firearm

9    transfers, sales, and registrations, including, but

10   not limited to, transfers, sales, and registrations

11   of firearms occurring after the enactment of the

12   challenged laws but before the issuance of the

13   notice."  After the objections that are listed the

14   response is that you would be the only individual

15   that reviews firearm transfers, sales, and

16   registrations to the extent they're in a database.

17              MR. PORTER:  Objection.  Could you read

18   the answer verbatim, please, rather than paraphrase

19   it?

20       Q.   "The FRB through Ms. Dunne 'reviews'

21   firearm transfers, sales, and registrations only to

22   the extent that she maintains the database in which

23   these records are stored and retrieves records from

24   the database."
```

**Michaela Dunne**
**August 30, 2017**

36

1          MR. PORTER:  Could we have the sentence

2  before that, please.

3     Q.  "The Secretary further states that no one

4  within EOPSS or the FRB processes or approves

5  firearm transfers, sales, and registrations."

6          Is it accurate that you were the

7  individual who reviews firearms transfers, sales,

8  and registrations?

9     A.  I do not review them.

10          MR. PORTER:  Could we note for the

11  record that the word "reviews" in the interrogatory

12  response on Page 15 is in quotation marks.

13          MR. NARDONE:  That is fine.  The word

14  "reviews" is there.  I'm literally just reading your

15  response.

16          MR. PORTER:  Yes.  I just wanted to note

17  that.

18     Q.  Does anyone review these records?

19     A.  No.

20     Q.  So you would say that answer is just not

21  accurate?

22          MR. PORTER:  Objection.  No, no, no.

23  Objection.  I didn't hear that in her answer.

24          MR. NARDONE:  She can answer.  You don't

**Michaela Dunne**
**August 30, 2017**

```
 1   need to coach her.

 2              MR. PORTER:  I would just ask you to

 3   read the whole thing.

 4              THE WITNESS:  Sure.

 5      A.  I would say that there is not any one

 6   person who is actually responsible for reviewing,

 7   processing, approving, or maintaining the records.

 8   We maintain electronic databases, and we only see

 9   the records if prompted.

10              So while I would be considered the

11   keeper of the records and the Firearms Records

12   Bureau by statute is the keeper of the records, we

13   don't have an active -- we don't have an active

14   review process, because everything is simply

15   maintained transactionally in a database.

16      Q.  So no one is involved with actively

17   reviewing the --

18      A.  Correct.

19      Q.  If you could turn your attention to

20   Interrogatory No. 13.  You might want to take a

21   moment to read it again.

22      A.  Okay.

23      Q.  The interrogatory states, "State the basis

24   for your assertion that Massachusetts did not
```