**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DAVID SETH WORMAN**, *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Case No. l:17-cv-10107-WGY |
| ) | |
| **v.** ) | |
| ) | |
| **MAURA HEALEY**, *et al,* ) | |
| ) | |
| **Defendants.** ) | |

**RESPONSES OF DEFENDANT DANIEL BENNETT
IN HIS CAPACITY AS SECRETARY OF PUBLIC SAFETY AND SECURITY TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

Plaintiffs, David Seth Worman, Anthony Linden, Jason William Sawyer, Nicholas Andrew Feld, Paul Nelson Chamberlain, Gun Owners' Action League, Inc., On Target Training, Inc., and Overwatch Outpost (collectively "Plaintiffs"), by and through their attorneys, pursuant to Federal Rules of Civil Procedure 33 and Local Rules 26 and 33.1 of the United States District Court for the District of Massachusetts, have propounded this First Set of Interrogatories to All Defendants. Set out below are the responses and objections of Daniel Bennett, in his capacity as Secretary of Public Safety and Security. The Plaintiffs' Definitions and Instructions are retained in this Response solely for the convenience of the parties and without prejudice to the Respondent's right to object to those Definitions and Instructions in whole or in part.

**DEFINITIONS**

1. Plaintiffs hereby incorporate the definitions contained in Local Rule 26.5(c) and Federal Rule of Civil Procedure 34(a) of "document," "communication," "person," and "concerning."

2. "Action" means *Worman et al.* v. *Baker et al,* Case No. l:17-cv-10107-WGY (D. Mass.).

1

have not been answered, and state the reason(s) for not answering any portions that have not been answered.

10. If any objection is made that responding to a particular interrogatory would be unduly burdensome, explain with particularity the burden of providing a response.

## INTERROGATORIES

1. Identify any incident in which a Banned Firearm or Banned Magazine has been used to commit a crime in Massachusetts. For each incident, state the type, make, model, caliber, the capacity of any magazine(s), and manufacturer of the firearm; the location of the incident; the type of crime; whether any injuries were sustained; the number of shots discharged; and any agency to which a report of the incident was submitted.

**RESPONSE:** The Secretary objects to this interrogatory on the basis that his response would not be relevant to this matter within the meaning of Fed. R. Civ. P. 26(b)(1), nor is the request reasonably calculated to lead to the discovery of relevant evidence. The Secretary further objects because the discovery sought is not proportional to the needs of the case within the meaning of Fed. R. Civ. P. 26(b)(1) because of its breadth and the burden it would impose. The Secretary further objects to the extent this interrogatory may call for disclosure of information that the Secretary is legally precluded from making public under Mass. R. Crim. P. 5 and which if disclosed could obstruct or impede ongoing criminal investigations. The Secretary further objects to disclosing Criminal Offender Record Information under M.G.L. c. 6, § 172 and from providing records divulging or tending to divulge the names and addresses of persons who own or possess firearms, rifles, shotguns, machine guns and ammunition pursuant to M.G.L. c. 66, § 10(d).

The Secretary also objects on the basis of well-established common law privileges including the privilege protecting law enforcement investigative information and techniques, *see, e.g., Puerto Rico* v. *United States,* 490 F.3d 50, 62-64 (1st Cir. 2007), and the privilege protecting communications made to him or his office to secure the enforcement of law. *See e.g., District Attorney* v. *Flatley,* 419 Mass. 507, 510 (1995). The Secretary also objects on the basis of the deliberative process privilege which protects information which "'reflects advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Department of Interior* v. *Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001).

Subject to the above objections and privileges, the Secretary states that information about weapons used in crimes charged by government entities is not comprehensively gathered and maintained by the Executive Office of Public Safety and Security (EOPSS). However, the Department of Criminal Justice Information Services (DCJIS), a sub-agency within EOPSS, receives criminal

arraignment and disposition information from the Trial Court and Probation Departments as provided in M.G.L. c. 6, § 168A. In accordance with M.G.L. c. 6, § 167A and 172 DCJIS is statutorily authorized to ensure appropriate access to, and dissemination of, said data, including all convictions based on violations of M.G.L. c. 140, § 131M and M.G.L. c. 269, § 10(m). The database does not record the particular statutory violation for each offense committed, but it does include codes that permit a search for entries reflecting firearms violations such as possession of a large capacity weapon and possession of a machine gun. Accordingly, DCJIS has created from the database a spreadsheet ("Spreadsheet A," attached) of all arraignments and convictions associated with these codes since January 1, 1998. These records have been redacted of all personal identifying information as required under M.G.L. c. 6, §§ 172 and 178.

By way of further response and without limitation, the Secretary states that Spreadsheet A, although it provides a snapshot of arraignments and convictions for possession of large capacity weapons and large capacity machine guns, is both and over- and under-representative of the total number of incidents in which a Banned Firearm or Banned Magazine has been used to commit a crime in Massachusetts. It is over-representative because the perpetrators of these crimes are often arraigned in both District Court and Superior Court, which results in duplicate entries into the database for the same offense. But the spreadsheet is also under-representative because, although some of the records in the spreadsheet reflect violations of the assault weapons ban, there is no specific code in the system for possession of an assault weapon or for violations of M.G.L. c. 140, §131M. One of the entries in the spreadsheet notes that the offense was for an assault weapon, but this may be true of other entries that contain no such notation. Further, there are circumstances in which a Banned Firearm or Banned Magazine is used to commit a crime, but the law enforcement agency involved chooses to charge the defendant(s) under a different set of statutes or offenses, such as M.G.L. c. 265, § 18B (enhanced sentencing for use of a firearm in commission of a felony) or M.G.L. c. 269, § 10(h), in combination with G.L. c. 269, § 10G (enhanced sentencing for certain firearm offenses). Determining which criminal convictions based on these and other weapons-related offenses involved a Banned Firearm or Banned Magazine would require a case-by-case examination of thousands of individual criminal cases, the detailed records of which are largely maintained by state or local agencies involved in investigating or prosecuting the crime at issue and not by any of the Defendants. In some cases, making these determinations would be impossible, for example, where the date of manufacture is necessary to determine whether the weapon involved was a Banned Firearm or Banned Magazine.

In addition, in many other cases, violent crimes involving firearms go unsolved or are solved without the investigating authority ever recovering the firearm used to perpetrate the offense. Many violent felonies leave law enforcement responders with ample evidence that a firearm of some type was involved (e.g., shell casings recovered from the scene, projectiles recovered from body of victim) but without the firearm itself. In such cases, it would be impossible to determine whether the weapon employed was a Banned Firearm or used a Banned Magazine.

2. Identify any incident in which more than ten shots were fired by a single criminal perpetrator in a single incident in Massachusetts. For each incident, state the type, make, model, caliber, capacity of magazine(s), and manufacturer of the firearm; the

8

reasonably calculated to lead to the discovery of relevant evidence. The Secretary further objects because the discovery sought is not proportional to the needs of the case within the meaning of Fed. R. Civ. P. 26(b)(1) because of its breadth and the burden it would impose.

The Secretary further objects because the interrogatory is too vague to permit the Secretary to form a response as it seeks, without specification or limitation, information on "any reviews" of transfers and sales.

The Secretary further objects on the basis that this interrogatory calls for disclosure of information that the Secretary is legally precluded from making public under Mass. R. Crim. P. 5 and which if disclosed could obstruct or impede ongoing criminal investigations. The Secretary is further legally precluded from disclosing Criminal Offender Record Information under M.G.L. c. 6, §§ 172 and 178 and from providing records divulging or tending to divulge the names and addresses of persons who own or possess firearms, rifles, shotguns, machine guns and ammunition pursuant to M.G.L. c. 66, § 10(d).

The Secretary also objects on the basis of well-established common law privileges including the privilege protecting law enforcement investigative information and techniques, *see, e.g., Puerto Rico* v. *United States,* 490 F.3d 50, 62-64 (1st Cir. 2007), and the privilege protecting communications made to him or his office to secure the enforcement of law. *See e.g., District Attorney* v. *Flatley,* 419 Mass. 507, 510 (1995). The Secretary also objects on the basis of the deliberative process privilege which protects information which "'reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Department of Interior* v. *Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001).

By way of further response and subject to the above objections and privileges and in support of the stated objections and privileges, the Secretary states that between January 1, 2015 and July 20, 2016, Michaela Dunne periodically retrieved data from the FRB's records concerning firearms transfers and sales and provided it to the Office of the Attorney General. She did not conduct any substantive "review" of the data provided or make any determination regarding the legality of the transfers.

12. Identify the person or persons responsible for, or who participated in, responding to

    questions from the public regarding the scope of the Challenged Laws including, but not

    limited to, the Notice of Enforcement.

**RESPONSE:** The Secretary states that EOPSS' policy is to refer questions about the Notice of Enforcement to the Office of the Attorney General.