```
                    Volume 1, Pages 1-92

                     Exhibits: 1-7

      IN THE UNITED STATES DISTRICT COURT

       FOR THE DISTRICT OF MASSACHUSETTS



* * * * * * * * * * * * * * * * * *

DAVID SETH WORMAN, et al.,

              Plaintiffs,

vs.

CHARLES D. BAKER, in his official

capacity as Governor of the

Commonwealth of Massachusetts, et al.,

              Defendants

* * * * * * * * * * * * * * * * *

  Rule 30(b)(6) DEPOSITION OF EXECUTIVE OFFICE OF

 PUBLIC SAFETY AND SECURITY (by David Marc Solet)

       Wednesday, August 30, 2017, 9:31 a.m.

         Campbell Campbell Edwards & Conroy

        One Constitution Plaza, Third Floor

           Charlestown, Massachusetts 02129



       ------- Alan H. Brock, RDR, CRR-------

                   C.J. Reporting

                   P.O. Box 1373

            Andover, Massachusetts 01810

                    617.763.1725
```

**Page 2**

```
 1   APPEARANCES:
 2       Bradley Arant Boult Cummings LLP
 3       Marc A. Nardone, Esq.
 4       John Parker Sweeney, Esq.
 5       1615 L Street, N.W., Suite 1350
 6       Washington, D.C. 20036
 7       202.719.8256
 8       mnardon@bradley.com
 9       jsweeney@bradley.com
10       for Plaintiffs
11
12       Campbell Campbell Edwards & Conroy
13       Christopher R. Howe, Esq.
14       One Constitution Plaza, Third Floor
15       Charlestown, Massachusetts 02129
16       617.241.3000  fax: 617.241.5115
17       chowe@campbell-trial-lawyers
18       for Plaintiffs
```

**Page 3**

```
 1       Office of the Attorney General
 2       William W. Porter, Esq.
 3       Gary Klein, Esq.
 4       Assistant Attorneys General
 5       One Ashburton Place
 6       Boston, Massachusetts 02108
 7       617.963.2959
 8       bill.porter@state.ma.us
 9       gary.klein@state.ma.us
10       for Defendants
```

**Page 4**

```
                    I N D E X

                  EXAMINATIONS
    DAVID MARC SOLET
       MR. NARDONE                         5
              EXHIBITS MARKED
    1   Subpoena                           5
    2   Responses of Defendant Daniel      5
        Bennett to Plaintiffs' First Set
        of Interrogatories to all
        defendants
    3   Responses of Defendant Daniel      5
        Bennett to Plaintiffs' First Set
        of Requests for the Production of
        Documents
    4   Spreadsheet                       28
    5   Printouts of UCR Data, Table 20,  50
        For the Years 2005 Through 2015
    6   Notice of Enforcement             61
    7   Remarks of Attorney General Maura 79
        Healey

    Exhibits returned to Attorney Nardone
```

**Page 5**

```
 1       August 30, 2017    9:31 a.m.
 2             P R O C E E D I N G S
 3       (Exhibit 1 marked for identification.)
 4       (Exhibit 2 marked for identification.)
 5       (Exhibit 3 marked for identification.)
 6             DAVID MARC SOLET,
 7   being first duly sworn or affirmed to testify to the
 8   truth, the whole truth, and nothing but the truth,
 9   was examined and testified as follows:
10         MR. NARDONE:  For the record, my name is
11   Marc Nardone, counsel for the plaintiffs in the case
12   styled David Seth Worman et al. versus Charles D.
13   Baker, in his official capacity as Governor of the
14   Commonwealth of Massachusetts, et al.
15              EXAMINATION
16   BY MR. NARDONE:
17     Q.  Could you please state your full name and
18   job title for the record, please.
19     A.  My name is David Marc Solet, and Marc is
20   spelled with a c.  I'm the chief legal counsel at
21   the Executive Office of Public Safety and Security
22   for the Commonwealth of Massachusetts.
23     Q.  And have you ever had your deposition taken
24   before?
```

### Page 6

1  A. I have not.
2  Q. We'll go over a few ground rules here.
3  Please try to keep your voice up so the court
4  reporter can hear everything. Please wait until
5  I've finished asking all the question before you
6  start to respond. He can only take one of us down
7  at a time. If any of the questions that I ask are
8  unclear or anything like that, please just ask me to
9  restate it or rephrase it, tell me you don't
10 understand, and we'll try to work through that. If
11 you want to take a break at any time, just let me
12 know and we can stop. The only issue is, if there's
13 a question pending, I'll ask that you let me finish
14 it before we take a break. Does that all make
15 sense?
16  A. Yes.
17      MR. PORTER: I'd like to just note the
18 stipulation I hope we can keep from yesterday, which
19 is that all objections except as to the form of the
20 question and all motions to strike are reserved
21 until the time of trial.
22      MR. NARDONE: That's fine.
23  Q. How long have you been in your current
24 position?

### Page 7

1  A. I came over to the Executive Office of
2  Public Safety in April of 2015.
3  Q. And what did you do before that?
4  A. I was a prosecutor in the Middlesex
5  District Attorney's office since 2001.
6  Q. And what kind of crimes did you prosecute
7  generally?
8  A. At the time that I left the office I was
9  the general counsel of the Middlesex DA's office,
10 and I was handling a mixture of serious violent
11 crimes, like homicides, and organized crime
12 offenses, particularly wiretap investigations.
13  Q. And in your role as a prosecutor, did you
14 ever prosecute anyone for a violation of the
15 Massachusetts assault weapons ban?
16  A. I don't believe that I ever used Chapter
17 140, Section 131M. I did prosecute multiple people
18 for possessing weapons that would be classified as
19 assault weapons under that statute.
20  Q. I'm going to hand you what's been marked as
21 Exhibit 1. If you could take a look at that.
22  A. Can I just clarify? So you asked about
23 weapons, and I said not under that statute. I'm
24 certain that I prosecuted people for large-capacity

### Page 8

1  feeding devices under that same provision, but I
2  don't believe I ever charged anybody with the
3  assault weapon. I used typically a different
4  provision of law to do that.
5  Q. And what provision of law would that be?
6  A. It would depend on the fact scenario, but
7  sometimes I would charge under Chapter 265, Section
8  18B, I believe is the use of a large-capacity weapon
9  in the commission of a felony. If, for instance, it
10 was an ongoing drug operation and the weapon was
11 recovered, I might use that. Or if the person had
12 qualifying prior convictions, I would use Chapter
13 269, Section 10, capital G, which is sometimes
14 referred to as the Armed Career Criminal Act,
15 because that would carry a stronger penalty under
16 those circumstances.
17  Q. So it's safe to say that if an assault
18 weapon were used in a crime, it's not necessarily
19 the case that a prosecution would result under
20 Chapter 131M?
21  A. That's right.
22  Q. If you could take a look at that document I
23 handed you, marked as Exhibit 1, and just briefly
24 flip through it and let me know if you've seen that

### Page 9

1  before.
2  A. I have, yes.
3  Q. And if you could turn to, near the end
4  there is a list of topics with a header called
5  Attachment A. Have you seen that list?
6  A. I have.
7  Q. And it's my understanding, and please
8  correct me if I'm wrong, that there are some of
9  these topics that you're going to be testifying
10 about but not all of them today?
11  A. That's correct.
12  Q. And which topics are you going to be
13 testifying about?
14  A. I think the intention is that I testify to
15 1 through 8.
16  Q. Okay. And you're prepared to testify to
17 all of those; correct?
18  A. And I think probably also, to the extent
19 that somebody is testifying, I think that Michaela
20 Dunne is probably going to testify to 9, 10, and
21 11 -- but as to 13 and 14, if it was one of us.
22      MR. PORTER: If I may: I think
23 Michaela's covering 9 through 12; right? Does that
24 look right?

Page 70

1 because -- well, the witness can answer if he has
2 information based on public information. But to the
3 extent the witness is concerned right now that if he
4 answers he may be disclosing information he has
5 received in the context of an attorney-client
6 communication or in the context of a law enforcement
7 investigation, I would instruct him not to answer
8 that.
9  A. Then I'm going to decline to answer that
10 question.
11  Q. Is EOPSS continuing to provide firearms
12 records to the Attorney General in response to
13 requests for -- under the review that was part of
14 the notice of enforcement?
15    MR. PORTER: This question I'll permit
16 an answer to if the witness knows, but no more
17 detail than this, because it will involve --
18    MR. NARDONE: I haven't asked any other
19 questions.
20    MR. PORTER: I understand, but it will
21 involve privileged material if it gets into more
22 detail. If the witness knows.
23  A. The answer is yes.
24  Q. In the Attorney General's remarks related

Page 71

1 to the notice of enforcement, she stated that tens
2 of thousands of copies or duplicates had been sold
3 in 2015. Do you know if this number came from EOPSS
4 records?
5  A. I expect that it would have, but I don't
6 know. I wasn't part of the team that assembled
7 statistics for the Attorney General.
8  Q. Did anyone in your office work with the
9 Attorney General in the promulgation of the notice
10 of enforcement?
11  A. In the notice of the promulgation? Meaning
12 the drafting of the documents that you showed me,
13 what's been marked as Exhibit 6?
14  Q. That's correct.
15  A. No.
16    MR. PORTER: Sorry, Marc. I have no
17 idea where you're at in your outline. We were going
18 to call Ms. Dunne and give her 20 minutes' notice.
19 Just let me know when you get there. We can text or
20 call her, and then she'll drive over. She's about
21 15 minutes away.
22    MR. NARDONE: Okay. I'll be very
23 cognizant of that.
24    MR. PORTER: I'm just saying that to not

Page 72

1 cause any undue delay.
2    MR. NARDONE: It's about 11:00 o'clock,
3 so I imagine a lunch break will probably be right
4 around where we're talking about.
5    MR. KLEIN: Are you confident enough
6 that I can call her and let her know --
7    MR. NARDONE: I'm not prepared to give
8 an exact time right now.
9    (Discussion off the record.)
10  Q. Is anyone in EOPSS responsible for
11 determining whether a firearm is a copy or
12 duplicate?
13  A. There's nobody who has primary
14 responsibility. There's no single person who that's
15 their primary responsibility. State Troopers who
16 are charged with enforcing the laws of
17 Massachusetts, parole officers who have a similar
18 role, if they were to encounter a weapon, that would
19 be part of their responsibility in terms of
20 determining whether it was evidence of a crime or
21 not evidence of a crime.
22  Q. So the law enforcement officers and
23 probation officers under the umbrella of EOPSS would
24 have that --

Page 73

1  A. Not probation officers. Parole officers
2 are EOPSS personnel.
3  Q. So the law enforcement officers and parole
4 officers under EOPSS would have that responsibility
5 in the field.
6  A. That's right.
7  Q. If you know, does EOPSS have any written
8 protocols as to how to determine whether a weapon is
9 a copy or duplicate?
10  A. No. I think that the personnel would be
11 relying on the Attorney General's guidance, which is
12 the document that you've shown.
13  Q. So if you could turn to Page 4 of that
14 document, which is Exhibit 6. It states that, in
15 the second paragraph below the number 2, it states,
16 "The fact that a weapon is or has been marketed by
17 the manufacturer on the basis that it is the same as
18 or substantially similar to one or more enumerated
19 weapons will be relevant to identifying whether the
20 weapon is a copy or duplicate." Do you see that
21 statement?
22  A. I do.
23  Q. What is EOPSS's position on what the word
24 "relevant" means there?