1

```
                                    Volume I
                                    Pages 1-80

      IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF MASSACHUSETTS


                              No. 1:17-cv-10107-WGY


DAVID SETH WORMAN, et al.,
     Plaintiffs,
vs.
CHARLES D. BAKER, et al.,
     Defendants.




         DEPOSITION OF MICHAEL HALPIN
    Friday, September 15, 2017 at 9:40 a.m.
      Campbell, Campbell, Edwards & Conroy
             One Constitution Center
           Boston, Massachusetts 02129




    ----------Jennifer A. Doherty, CSR--------------
            Certified Shorthand Reporter


               C. J. REPORTING
                P.O. Box 1373
              Andover, MA  01810
                 617.763.1725
              www.cjreporting.com
```

## Page 2

```
 1  APPEARANCES:
 2
    BRADLEY ARANT BOULT CUMMINGS, LLP
 3  BY: John Parker Sweeney, Esq.
    1615 L Street, N.W., Suite 1350
 4  Washington, D.C. 20036
    202-719-8216
 5  jsweeney@bradley.com
    For the Plaintiffs.
 6
 7  BRADLEY ARANT BOULT CUMMINGS, LLP
    BY: Marc A. Nardone, Esq.
 8  1615 L. Street, N.W., Suite 1350
    Washington, D.C. 20036
 9  202-719-8256
    mnardone@bradley.com
10  Co-counsel for the Plaintiffs.
11
    OFFICE OF THE ATTORNEY GENERAL
12  ASSISTANT ATTORNEYS GENERAL
    BY:  William W. Porter, Esq.
13  One Ashburton Place
    Boston, Massachusetts 02108
14  bill.porter@state.ma.us
    For the Defendants.
15
16  OFFICE OF THE ATTORNEY GENERAL
    Gary Klein, Esq.
17  One Ashburton Place, 18th Floor
    Boston, Massachusetts 02108
18  617-963-2567
    gary.klein@state.ma.us
19  Senior Trial Counsel
20
21
22
23
24
```

## Page 3

```
 1  APPEARANCES:
 2
 3  ALSO PRESENT:
 4  CAMPBELL CAMPBELL EDWARDS & CONROY
    Christopher R. Howe, Esq.
 5  One Constitution Center
    Boston, Massachusetts 02129
 6  617-241-3029
    chowe@campbell-traial-lawyers.com
 7
 8  Siobhan E. Kelly, Esq.
    470 Worcester Road
 9  Framingham, Massachusetts 01702
    Staff Counsel-Department of State Police
10
```

## Page 4

```
 1              I N D E X
    Testimony of:        Direct
 2
    MICHAEL HALPIN
 3    by Mr. Nardone       5
 4
 5
 6          E X H I B I T S
    No.     Description           For I.D.
 7
    1  Subpoena                 5
 8
    2  Defendant Colonel Richard D. McKeon's
 9    Responses to Plaintiffs' First Set of
      Interrogatories            5
10
    3  Basic Firearms Instructor Course
11    Patrol Rifle Document       26
12  4  2-page Document            36
13  5  Multi-page Document        36
14  6  2016 Crime Gun Report      43
15  7  Law Enforcement Guide to Firearms Law  49
16  8  Enforcement Notice/Prohibited Assault
      Weapons                    62
17
18
19       **EXHIBITS SENT TO ATTORNEY NARDONE**
20
```

## Page 5

```
 1            P R O C E E D I N G S
 2            (Exhibit Nos. 1 and 2 premarked for
 3   identification.)
 4            MICHAEL HALPIN, having been
 5   satisfactorily identified by the Notary Public was
 6   duly sworn and testified as follows:
 7            DIRECT EXAMINATION
 8   BY MR. NARDONE:
 9     Q.  Could you tell us your full name for the
10   record?
11     A.  Sure.  It's Michael Halpin, H-A-L-P-I-N.
12     Q.  Have you ever been deposed before?
13     A.  I have not.
14     Q.  So I'm going to go over a few ground rules
15   up front.  Please keep your voice up so the court
16   reporter can hear everything.  Please wait until I
17   finish asking a question before you start to answer.
18   We can't talk over each because there's no way she's
19   able to get it down.
20            If you have any questions about any
21   of the questions that I ask you, let me know and
22   tell me you don't understand something and I'll try
23   to clarify it.  If you're unfamiliar with any of the
24   terms or anything like that, just let me know and
```

18

1  A.  I would say they should be, and generally,
2  yes.
3  Q.  As we sit here today, you're not aware of
4  any incidents in which a banned firearm or magazine
5  was used in a shooting that was determined to be in
6  self-defense?
7  A.  I am not.
8  Q.  If you can go on to Interrogatory No. 4,
9  it asked for investigations, arrests, or convictions
10 of persons for a possession of a banned firearm or
11 magazine, and the Colonel's response is the incident
12 marked in Interrogatory No. 1 that we discussed.  Do
13 you have any additional information that would be
14 responsive to that interrogatory?
15 A.  No.
16 Q.  The next interrogatory asked for the
17 identity of person or persons responsible for or
18 participated and determined whether a particular
19 firearm is a copy or duplicate of an enumerated
20 banned firearm.
21      After objections, the Colonel's
22 response is he's unaware of any persons employed
23 with the Massachusetts State Police who were
24 responsible for development of the Attorney

19

1  General's Enforcement Notice.  Is that accurate?
2  A.  Yes, I believe it is.
3  Q.  As we sit here today, are you aware of
4  anyone that was involved?
5  A.  No, I am not.
6  Q.  The next interrogatory asks for any person
7  or persons responsible for participating in the
8  preparing of a list of guns that are not assault
9  weapons and related questions and answers published
10 by the Attorney General.
11      Are you familiar with the list of
12 guns that are not assault weapons and the related
13 questions and answers that are currently on the
14 Attorney General's website?
15 A.  Yes, I am familiar with it.
16 Q.  The Colonel's response is that he's not
17 aware of anyone that was responsible or participated
18 in a substantial way with the creation of that list
19 and the answers to the questions.  Is that accurate
20 as we sit here today?
21 A.  Yes.
22 Q.  The next interrogatory asks for the person
23 or persons responsible for the 2016 review that led
24 the Attorney General to issue the Notice of

20

1  Enforcement.
2      And, again, after objections, the
3  Colonel's answer is that he's unaware of any person
4  within the Massachusetts State Police who was
5  responsible for that review.  Is that accurate?
6  A.  Yes.
7  Q.  You're not aware of anyone that --
8  A.  I am not.
9  Q.  Number 8 is a very similar question asking
10 for anyone that participated in the preparation of
11 the Notice of Enforcement itself.  Again, the
12 Colonel was unaware.
13      Are you aware of anyone that
14 participated in that?
15 A.  I am not.
16 Q.  Interrogatory No. 9 asks for the identity
17 of persons responsible for reviewing, processing,
18 approving, and maintaining records of Massachusetts
19 firearms transfers, sales, and registrations.
20      After objections, the Colonel states
21 that the Massachusetts State Police do not have
22 responsibility for any of that and that is done by
23 the Secretary of Public Safety.
24      Does Massachusetts State Police

21

1  retain any records whatsoever related to the
2  transfer of firearms?
3  A.  Again, I think the only possible response
4  or responsive material we would have would be to
5  specific cases; meaning, if they were gathered as
6  part of an investigation, then the department may
7  have that in an investigative file, but we don't
8  aggregate or track the information.
9  Q.  Just make sure I understand.  You don't
10 keep a database of transfers, but if you were
11 investigating a crime where a transfer were
12 relevant, you would pull the records for that from
13 whoever does keep records of transfers.
14 A.  Yes, possibly.  I assume if that were
15 relevant to an investigation, the officer would want
16 to review that information.
17 Q.  So you have access to the records but you
18 don't keep them?
19 A.  Correct.
20 Q.  The next interrogatory asked for the
21 number of -- and this is a term that we will talk
22 about shortly -- Massachusetts-compliant firearms
23 that were transferred after the enactment of
24 challenge laws but prior to the Notice of

**22**

1  Enforcement.
2      Before you answer, I'm going to
3  explain to you what Massachusetts compliant firearms
4  means in this interrogatory, and what it refers to
5  are firearms that were designated to be
6  Massachusetts compliant by manufacturers and were
7  sold in Massachusetts under that designation?
8      MR. PORTER:  I just object to the
9  form of this question and any question that uses the
10 term "Massachusetts-compliant firearms."  As we've
11 asserted throughout, we think it's a term that
12 really isn't possible to use and its meaning is
13 unknowable and inherently contradictory.  So that's
14 the objection.
15   Q.  You can answer.
16   A.  I'm going to ask you to ask me the
17 question again.
18   Q.  Sure.  First, using what I described as a
19 Massachusetts-compliant firearm, do you understand
20 what I was staying when I referred to that?
21   A.  I understand, yes.  As you defined it,
22 yes, I understood that.
23   Q.  This interrogatory asks to state how many
24 of those firearms were transferred after the

**23**

1  enactment of the challenged laws.  And after
2  objections, the Colonel's response is that the State
3  Police do not maintain information sufficient to
4  answer that interrogatory.  Is that accurate?
5   A.  That is correct.
6   Q.  Interrogatory No. 11 asks for reviews of
7  firearms transfers and sales conducted between 1998
8  and 2016, any violation of law discovered through
9  such review, and any agency to which it reported the
10 violation was submitted.
11      After objections and privilege
12 limitations, the Colonel has identified Lieutenant
13 Zani as an individual who participated in reviews of
14 firearm sales.
15      Are there any other individuals that
16 you are aware of who participated in such reviews?
17   A.  I am not, no.
18   Q.  We'll discuss the substance of those
19 reviews with Mr. Zani.  I don't want to duplicate
20 the effort here.
21      The next interrogatory asks for
22 persons responsible for or participated in
23 responding to questions from the public regarding
24 the scope of the challenged laws including but not

**24**

1  limited to the Notice of Enforcement.
2      And the Colonel's response here is
3  that no particular person at the Massachusetts State
4  Police is responsible for responding to such
5  questions, but a number of Massachusetts State
6  Police personnel could receive random inquiries to
7  which they would respond.  So I have a number of
8  questions about that.
9      Number one, are individual
10 Massachusetts State Police Troopers or Officers
11 permitted to answer questions about the scope of
12 this law?
13   A.  We generally discourage our officers from
14 giving out legal advice to people; that being said,
15 you know, we have 2,300-plus members, and when
16 citizens come in and ask questions, I think they do
17 try to be as helpful as they can.
18      If a matter is very clear and can be
19 explained to somebody, I think they will sometimes
20 offer a piece of advice.  Sometimes they will direct
21 them to other people within the agencies.  We
22 sometimes get people referred from a barracks to the
23 legal section and we generally tell people, We're
24 not your lawyers, we can't give you legal advice.

**25**

1  That's all meant to prevent, you know, somebody
2  violating the law and using the department as the
3  justification for why they did what they did.
4      So we generally discourage it, both
5  our civilians and our uniform members from giving
6  what we could consider legal advice.
7   Q.  Are you aware of any inquiries that have
8  come in to anyone within the Massachusetts State
9  Police about the scope of the challenged laws or the
10 Notice of Enforcement?
11   A.  I am not.
12   Q.  Hopefully that will streamline the rest of
13 what we're going to go through here today since we
14 did that up front.
15      What I want to talk to you about
16 right now are some of the attributes of the banned
17 firearms and banned magazines.  And just so we're
18 clear, when I refer to banned firearms, I'm talking
19 about firearms that are banned under Massachusetts
20 law as either assault weapons, copies or duplicates
21 or that failed the features test that's incorporated
22 in federal law.  Does that make sense to you?
23   A.  Yes.
24   Q.  Does the Massachusetts State Police have a