# AMERICAN BAR ASSOCIATION
STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY

**Formal Opinion 478**                                                                               **December 8, 2017**

**Independent Factual Research by Judges Via the Internet**

*Easy access to a vast amount of information available on the Internet exposes judges to potential ethical problems. Judges risk violating the Model Code of Judicial Conduct by searching the Internet for information related to participants or facts in a proceeding. Independent investigation of adjudicative facts generally is prohibited unless the information is properly subject to judicial notice. The restriction on independent investigation includes individuals subject to the judge's direction and control.*[1]

## I. Introduction

The Internet provides immediate access to an unprecedented amount of information. Internet searches offer a vast array of information on endless topics. Social media sites provide extensive information that users share about themselves and others. Information discovered on the Internet may be highly educational and as useful to judges as judicial seminars and books. But information gathered from an Internet search may not be accurate. It may be biased, unreliable, or false. And, whether truthful or not, information discovered by a judge via the Internet that does not qualify for judicial notice and is not disclosed to the parties is untested by the adversary process.[2]

To help the judiciary navigate the hazards of Internet research, this opinion reviews the ethical parameters under the ABA Model Code of Judicial Conduct for conducting on-line independent fact-finding not tested by the adversary system.[3]

---

[1] This opinion is based on the ABA Model Code of Judicial Conduct as amended by the ABA House of Delegates through August 2010. The laws, court rules, regulations, rules of professional and judicial conduct, opinions promulgated in individual jurisdictions and the Code of Conduct for United States Judges may be controlling. In addition, standards for judicial notice are beyond the scope of this opinion and discussed throughout only in general terms.

[2] As used in this opinion, the term "judge" refers to "anyone who is authorized to perform judicial functions, including an officer such as a justice of the peace, magistrate, court commissioner, special master, referee, or member of the administrative law judiciary." *See* MODEL CODE OF JUDICIAL CONDUCT, Application § I(B)(2011).

[3] Fact gathering over the Internet may occur, for example, via (i) search engines like Google, Yahoo, Bing, Duck Duck Go and others, or (ii) electronic social media that is interactive like Facebook, Twitter, or Instagram. *See, e.g.*, ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 462 (2013), *Judge's Use of Electronic Social Networking Media* (" 'electronic social media' . . . refer[s] to internet-based electronic social networking sites that require an individual to affirmatively join and accept or reject connection with particular persons") (footnote omitted). This opinion covers

## II.  The ABA Model Code Provisions

The Preamble to the ABA Model Code of Judicial Conduct emphasizes that "[T]he United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society."[4]  This system requires that judges' decisions be based upon evidence presented on the record or in open court, and available to all parties.  Except for evidence properly subject to judicial notice, a defining feature of the judge's role in an adversarial system is that the judge will "consider only the evidence presented by the parties."[5]  Judges must be careful not to undermine this hallmark principle of judicial impartiality, or substitute for the time-honored role of the neutral and detached magistrate someone who combines the roles of advocate, witness, and judge.

### A.  *Ex Parte* Communications

Canon 2 of the Model Code states that a judge shall perform all duties of judicial office impartially, competently, and diligently.[6]  An independent and impartial judiciary ensures the right of litigants to a fair trial.  Impartiality is essential for the proper discharge of the judicial function.

Improper *ex parte* or "one-sided" communications undermine the independence and impartiality of the judiciary.  Such communications create the appearance of bias or partiality on the part of the judge and, therefore, are precluded under the Model Code.

Model Rule 2.9(A) bars *ex parte* communications except in limited circumstances.[7]  It provides: "A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers,

---

all types of Internet searching.  In addition, while the opinion addresses independent research by judges on the Internet, some of the principles that are discussed also apply to more traditional research resources.

[4] MODEL CODE OF JUDICIAL CONDUCT, Preamble [1] (2011).

[5] CHARLES G. GEYH & W. WILLIAM HODES, REPORTERS' NOTES TO THE MODEL CODE OF JUDICIAL CONDUCT 40 (2009).

[6] MODEL CODE OF JUDICIAL CONDUCT, Canon 2, R. 2.2 (a judge shall "perform all duties of judicial office fairly and impartially"); Rule 2.5(A) ("a judge shall perform judicial and administrative duties, competently and diligently").

[7] Certain *ex parte* communications are permitted.  The Model Code permits *ex parte* communications where they are permitted by law, such as in a settlement conference or certain applications for temporary equitable relief, or to address scheduling or administrative issues, or where the parties consent to permit *ex parte* communication, such as in an *in camera* review.  A judge may discuss the case with court personnel.  Judges may consult among or with other judges, court staff, and law clerks, *see* MODEL CODE OF JUDICIAL CONDUCT R. 2.9(A)(1)-(5) (2011); *id.* at cmt. [5], but as noted below, judges may not have others conduct research that the judge may not conduct.

**Formal Opinion 478**                                                                                         3

concerning a pending or impending matter."[8]  The ban on *ex parte* communication ensures that the judge will review and make rulings based only on the facts and evidence presented in the case.

### B. Independent Fact Research Precluded

The Model Code's rule on *ex parte* communication includes a provision that specifically addresses independent investigation of facts.  Model Rule 2.9(C) states: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed."  Comment [6] to Rule 2.9 clarifies that the "prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic."[9]

Importantly, Rule 2.9(C) does not preclude legal research.  Rule 2.9(C) carefully proscribes independent research of "facts."  Judges may conduct legal research beyond the cases and authorities cited or provided by counsel.[10]

Rule 2.9(C) of the Model Code was adopted in 2007 and represents a significant clarification of the independent investigation proscription in the Internet age.  Prior to 2007, the Model Code stated the general rule against *ex parte* communications and identified certain exceptions.  The 1990 Model Code addressed independent investigation in a brief comment: "A judge must not independently investigate facts in a case and must consider only the evidence

---

[8] The Model Code of Judicial Conduct defines "impending matter" as "a matter that is imminent or expected to occur in the near future."  MODEL CODE OF JUDICIAL CONDUCT, Terminology (2011) (references omitted).  A "pending matter" is "a matter that has commenced.  A matter continues to be pending through any appellate process until final disposition." *Id.* (references omitted).

[9] Thirty-one states have adopted Model Rule 2.9(C) or language substantially similar in their judicial codes. There is no similar provision in the Code of Conduct for United States Judges. For a discussion of independent fact-finding by state and federal judges generally see Hon. David B. Saxe, *"Toxic" Judicial Research*, N.Y. ST. B.J. 36 (Sept. 2015); Elizabeth F. Thornburg, *The Curious Appellate Judge: Ethical Limits on Independent Research*, 28 REV. LITIG. 131 (2008).  For a discussion of whether federal judges may conduct independent research for purposes of obtaining what they consider to be "background" information if the information does not form the basis for a decision see Rowe v. Gibson, 798 F.3d 622 (7th Cir. 2015).   For state-by-state adoption of Rule 2.9(C) see ABA, *CPR Policy Implementation Committee: Comparison of ABA Model Judicial Code and State Variations, Rule 2.9: Ex Parte Communication* (2016), http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/2_9.authcheckdam.pdf (last visited Nov. 21, 2017).

[10] CHARLES G. GEYH, JAMES J. ALFINI, STEVEN LUBET & JEFFREY M. SHAMAN, JUDICIAL CONDUCT AND ETHICS, §5.04 at 5-25 (5th ed. 2013) ("independent investigation of *the law* has always been permitted" (emphasis in original); judges are "experts on matters of law who are charged with the duty of declaring what the law is"); *see also id.* at 5-24 to 5-25 (further discussion of independent research by judges).

presented."[11]  The 2007 change, moving the proscription from a comment to the text of the rule, was explained as follows:

> In the Commission's view . . . the judge's duty to consider only the evidence presented is a defining feature of the judge's role in an adversarial system and warrants explicit mention in the black letter Rules.[12]

### C. Judicial Notice of Facts

Rule 2.9(C) of the Model Code permits a judge to consider facts "that may properly be judicially noticed. . . . [U]nlike most provisions of the Code of Judicial Conduct, Rule 2.9(C) incorporates a section of the law extrinsic to the Code; specifically, the law relating to judicial notice."[13]

For purposes of this opinion, Fed. R. Evid. 201(b)(1) and (2) contain an appropriate standard; they permit judicial notice of facts which are "not subject to reasonable dispute" because the facts are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[14]  Judicial notice is "founded on the assumption that certain factual determinations are not subject to reasonable dispute and thus may be appropriately resolved other than by the production of evidence before the trier of fact at trial."[15]

Fed. R. Evid. 201(a) governs judicial notice of "adjudicative facts," not "legislative facts."[16]  As the 1972 Advisory Committee Note to Rule 201(a) explains, this "terminology was coined by Professor Kenneth Davis in his article *An Approach to Problems of Evidence in the Administrative Process*, 55 HARV. L. REV. 364, 404–407 (1942)."  The Advisory Committee Note explains that "adjudicative facts" are those "which relate to the parties" or, more fully:

---

[11] *See* MODEL CODE OF JUDICIAL CONDUCT, Canon 3B(7), cmt. (1990).
[12] ANNOTATED MODEL CODE OF JUDICIAL CONDUCT, 194 (3d ed. 2016) (citing Charles G. Geyh & W. William Hodes, REPORTERS' NOTES TO THE MODEL CODE OF JUDICIAL CONDUCT, *supra* note 5).
[13] Minn. Bd. on Jud. Standards Advisory Op. 2016-2 (2016).
[14] A judge should be familiar with the jurisdiction's authority on judicial notice.  The rules and process, even the definition of judicial notice, vary from jurisdiction to jurisdiction.  Many state evidence codes track the language of Federal Rule of Evidence 201. *See* CAL. EVID. CODE ANN. § 452; FLA. ST. ANN. § 90.202; ILL. R. EVID. 201; PA. R. EVID. 201; TEX. R. EVID. R. 201.  For a discussion of various state standards for judicial notice see O'Quinn v. Hall, 77 S.W.3d 438 (Tex. App. 2003); People v. Davis, 357 N.E.2d 792 (Ill. 1976); *In re* Cervera, 16 P.3d 176 n. 3 (2001); Maradie v. Maradie, 680 So. 2d 538 (Fla. Dist. Ct. App. 1996); Kinley v. Bierly, 876 A.2d 419 (Pa. Super. Ct. 2005).
[15] MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 201:1 (7th ed. 2015) [hereinafter "GRAHAM"].
[16] *See Federal Rules of Evidence Rule 201: Judicial Notice of Adjudicative Facts*, CORNELL LEGAL INFORMATION INSTITUTE, https://www.law.cornell.edu/rules/fre/rule_201 (last visited Nov. 27, 2017).

> When a court or an agency finds facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent—the court or agency is performing an adjudicative function, and the facts are conveniently called adjudicative facts. . . . . Stated in other terms, the adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses.[17]

"Legislative facts," on the other hand, "do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion."[18] Research of legislative facts does not raise the same due process concerns as research of adjudicative facts.

Procedural protections generally are built into taking judicial notice. Federal Rule of Evidence 201(e) provides that a party is entitled to be heard, either before or after a court takes judicial notice of a fact. If the court takes judicial notice of adjudicative facts, "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."[19]

### D. Judge's Duty to Supervise

Model Rule 2.9(D) requires that judges take steps to prevent court staff and officials from performing improper independent investigations. The Rule provides: "A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control."[20]

---

[17] KENNETH CULP DAVIS, 2 ADMINISTRATIVE LAW TREATISE 353 § 15.03 *Legislative and Adjudicative Facts* (West 1958).
[18] Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224, 245, n. 52 (5th Cir. 1976) (*quoting* Davis, *An Approach to Problems of Evidence in the Administrative Process*, 55 HARV. L. REV. 364, 402-416 (1942)).
[19] FED. R. EVID. 201(e). *See also* Garner v. Louisiana, 368 U.S. 157, 173 (1961) (citation omitted) ("[U]nless an accused is informed at trial of the facts of which the court is taking judicial notice, not only does he not know upon what evidence he is being convicted, but, in addition, he is deprived of any opportunity to challenge the deductions drawn from such notice or to dispute the notoriety or truth of the facts allegedly relied upon. Moreover, there is no way by which an appellate court may review the facts and law of a case and intelligently decide whether the findings of the lower court are supported by the evidence where that evidence is unknown. Such an assumption would be a denial of due process.")
[20] MODEL CODE OF JUDICIAL CONDUCT R. 2.9(D) (2011).

### III. Guidelines for Independent Factual Research by Judges Via the Internet

When deciding whether to independently investigate facts on the Internet, the judge should consider:

1. Is additional information necessary to decide the case? If so, this type of information generally must be provided by counsel or the parties, or must be subject to proper judicial notice.

2. Is the purpose of the judge's inquiry to corroborate facts, discredit facts, or fill a factual gap in the record? If the facts are adjudicative, it is improper for a judge to do so.

3. Is the judge seeking general or educational information that is useful to provide the judge with a better understanding of a subject unrelated to a pending or impending case? If so, the inquiry is appropriate. Judges may use the Internet as they would other educational sources, like judicial seminars and books.

4. Is the judge seeking background information about a party or about the subject matter of a pending or impending case? If so, the information may represent adjudicative facts or legislative facts, depending on the circumstances. The key inquiry here is whether the information to be gathered is of factual consequence in determining the case. If it is, it must be subject to testing through the adversary process.

### III.    Hypotheticals

The following hypotheticals are offered to provide guidance in determining whether independent research is permissible under the Model Code of Judicial Conduct.

**Hypothetical #1:** In a proceeding before the judge in a case involving overtime pay, defendant's counsel explains that the plaintiff could not have worked more than 40 hours per week because defendant's restaurant is in an "industrial area" and only open for breaks and lunch during the work-week and not on weekends. The judge is familiar with the area and skeptical of counsel's claims. The judge checks websites like Yelp and Google Maps, which list the restaurant as being open from 7 am to 10 pm, seven days each week. Does this search violate Rule 2.9(C) of the Model Code of Judicial Conduct?

**Analysis #1:** This search violates Rule 2.9(C) of the Model Code of Judicial Conduct because the restaurant's hours of operation are key to whether the plaintiff could prevail on a claim of unpaid overtime. The judge should ask the parties and their counsel to provide admissible evidence as to the restaurant's hours of operation.

**Hypothetical #2:** The judicial district in which the judge is assigned has many environmental contamination cases involving allegations that toxic chemicals have been released and have contaminated soil and groundwater. The judge is unfamiliar with this area of environmental law. Before a case is assigned to the judge, the judge reads online background information including articles. Does this action violate Rule 2.9(C) of the Model Code of Judicial Conduct?

**Analysis #2:** Judges may educate themselves by independent research about general topics of interest, even on topics that may come before the judge. General background learning on the Internet may be analogized to attending judicial seminars or reading books, so long as there is reason to believe the source is reliable. Even general subject-area research is not permissible, however, if the judge is acquiring information to make an adjudicative decision of material fact.[21]

**Hypothetical #3:** A social media-savvy lawyer just has been appointed to the bench. Before being appointed, this lawyer used social media to conduct extensive background research on potential jurors and opposing parties. The judge has been assigned to hear a complex, multi-party case involving lawyers from out of state. The judge wants to review the social media and websites of each of the parties and of the out-of-state lawyers to learn background information about the parties, to read the lawyers' writings, and to review a list of the lawyers' current and former clients. Does this action violate Rule 2.9(C) of the Model Code of Judicial Conduct?

---

[21] *See, e.g.*, Cal. Judges Ass'n Jud. Ethics Comm. Advisory Op. 68 (2013) (judge may research basic principles of medicine or other disciplines prior to being assigned a matter; judge may not investigate relevant facts that are germane to the case); Minn. Bd. on Jud. Standards Advisory Op. 2016-2 at 2 (2016) (a judge is permitted to investigate non-adjudicative facts, including research on the general subject areas of cases coming before the judge, without informing the parties); N.Y. Advisory Comm. on Jud. Eth. Op. 13-32 (2013) (a judge may "consult a disinterested expert on the law with respect to a legal issue that is not currently before the judge, and is not the subject of a pending or impending proceeding with identifiable parties"). *Cf.* Model Rule 2.9(A) ("a judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter," except as permitted under the rules); Model Rule 2.9(A)(2) (exception permitting a judge to "obtain the written advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives advance notice to the parties of the person to be consulted and the subject matter of the advice to be solicited, and affords the parties a reasonable opportunity to object and respond to the notice and to the advice received").

**Analysis #3:** While the Model Code of Judicial Conduct does not prohibit a judge from personally participating in electronic social media ("ESM"),[22] a "judge must . . . avoid using any ESM site to obtain information regarding a matter before the judge in violation of Rule 2.9(C)."[23] On-line research to gather information about a juror or party in a pending or impending case is independent fact research that is prohibited by Model Rule 2.9(C).[24]

Gathering information about a lawyer is a closer question. The judge's information-gathering about a lawyer may be permissible if it is done merely to become familiar with counsel who appear before the court similar to how a judge may have, in the past reviewed a legal directory like Martindale Hubbell, or to determine whether the lawyer is authorized to practice in the jurisdiction. However, the judge's independent research about a lawyer is not permitted if it is done to affect the judge's weighing or considering adjudicative facts. If an otherwise permissible review results in a judge obtaining information about the existence or veracity of adjudicative facts in the matter, the judge should ask the parties to address the facts in the proceeding through evidentiary submissions.[25]

**Hypothetical #4:** A trial judge presiding over an owner's claim for insurance coverage heard testimony from competing experts about their investigation and opinions about the cause of a fire that destroyed plaintiff's property. While preparing findings of fact and conclusions of law the judge received summaries her law clerk created from journals and articles on the proper techniques and analysis for investigating fires of unknown origin. Does this action violate Rule 2.9(C) of the Model Code of Judicial Conduct?

---

[22] *See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 462 at 2 (2013).
[23] *Id.*
[24] A judge may perform independent research to determine if a lawyer is authorized to practice in the jurisdiction, however, as this is not an adjudicative fact.
[25] Two examples should suffice to make the point. The California Judges Association Judicial Ethics Committee Opinion 68 (2013) explained that a judge may not independently examine a state bar website to determine whether a potential juror is a lawyer to satisfy the judge's concern about that potential juror's veracity in responding to a question at *voir dire*. Instead the judge should "raise the concerns with counsel and ask them to engage in follow-up factual research with respect to this potential juror." In NYC Medical and Neurodiagnostic, P.C. v. Republic Western Insurance Co., 798 N.Y.S.2d 309 (Appellate Term 2nd and 11th Dist. 2004), the New York Appellate Term reversed the trial court's order denying the defendant insurer's motion to dismiss, in part because the trial judge conducted independent factual research on the Internet. The judge used the Internet to access websites, including the New York State Department of Insurance website, to investigate whether the defendant was licensed to do business in the state because the plaintiff did not provide adequate proof on this issue.

**Analysis #4:** By searching the Internet for journals and articles on investigating fires, the law clerk engaged in an improper independent factual investigation. The method and extent of the expert's investigation is an issue in dispute, *i.e.,* an adjudicative fact. The respective experts' investigative methods related directly to the weight and credibility given to testimony concerning an adjudicative fact, and fall within the prohibition in Rule 2.9(C). The trial court, therefore, could not properly take judicial notice of these facts as being "not subject to reasonable dispute" because they are neither "generally known within the trial court's jurisdiction" nor can they be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). If the summaries addressed material facts in dispute and the judge used the summaries to make findings of fact without allowing the parties to test the factual content of the summaries through evidentiary submissions, the judge violated Model Rule of Judicial Conduct 2.9(A) by considering *ex parte* information, and violated Rule 2.9(D) by failing to require that the law clerk act in a manner consistent with the judge's obligations under the Code.[26]

**Hypothetical #5:** To render an accurate decision in a pending matter, a judge needs to know whether a party is or was the subject of other judicial proceedings. The judge searches the court's electronic files of the other cases and the facts of each case, including sealed information. The search reveals several other cases, some pending and some concluded and some within and some outside the judge's jurisdiction. Does the judge's search violate Rule 2.9(C) of the Model Code of Judicial Conduct?

**Analysis #5:** Model Rule 2.9(C) does not prohibit consideration of "facts that may properly be judicial noticed." For example, a judge may take judicial notice of a guilty plea entered

---

[26] As noted previously, Model Rule 2.9(A) provides that "[a] judge shall not initiate, permit, or consider ex parte communications . . . ." Model Rule 2.9(D) provides, "A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control."
   Disqualification is an additional risk that may arise from independent research in a pending case. Model Rule 2.11(A)(1) states that a "judge shall disqualify" him or herself when the judge has "personal knowledge of facts that are in dispute in the proceeding." Knowledge is "actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." MODEL RULES OF PROF'L CONDUCT, Terminology (2017). A judge likely has "personal knowledge" of facts that the judge has independently researched and found reliable. *See also* ANNOTATED MODEL CODE OF JUDICIAL CONDUCT (2d ed. 2011) ("Independent investigations by a judge . . . may provide a judge with personal knowledge of disputed facts, which is a special ground for judicial disqualification") (citations omitted).

before the judge in a previous case[27] and of other court records maintained by the clerk of the court in which the judge sits.[28] Court records can be judicially noticed for their factual existence, and the occurrence and timing of matters like hearings held and pleadings filed, but not for the truth of allegations or findings therein.[29] "[T]he law treats different portions of the files and records differently."[30] Standards of judicial notice require the judge to give notice and an opportunity to be heard either before or after taking judicial notice. Again, each judge should determine the law of judicial notice in the applicable jurisdiction.

Even when reviewing court records, however, a judge should be mindful of the following caution, from Illinois Judicial Ethics Opinion 2016-02:

> the particular judge's competence to navigate the computerized court records is essential . . . only facts which are 'not subject to reasonable dispute' are the proper subject of judicial notice. The judge must be confident that his or her review will lead to *accurate* information. For example, indexes of computerized court records are likely to contain individuals with the same name; is the inquiring judge capable of finding the appropriate records and accurately matching them to the party in question? Judges must be aware of their own skills and, more importantly, their limitations . . . .

Documents that are sealed may not be reviewed. That would be independent research disclosing information about a party to which both sides do not have access or even know exist. Reviewing sealed documents is improper under Rule 2.9(C) of the Model Code of Judicial Conduct.[31]

---

[27] *See* People v. Davis, 357 N.E.2d 792, 793-94 (Ill. 1976) (judicial notice of a conviction based upon a guilty plea in the same court before the same judge "falls squarely within the judicially noticeable category of facts 'capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy'").

[28] Ill. Jud. Ethics Comm. Op. 2016-02 (2016) (at sentencing, court may access county court files to review convicted criminal defendant's criminal case history "so long as the established procedural safeguards for taking judicial notice are adhered to"); Minn. Bd. of Jud. Standards, Advisory Op. 2016-2 (2016) (judge hearing *ex parte* order for protection may, under certain circumstances, take judicial notice of facts in Minnesota State Court Information Service).

[29] Professional Engineers v. Department of Transportation, 936 P.2d 473, 496 (Cal. S. Ct. 1997) (construing a state Constitution's civil service provision that was later superseded by constitutional amendment; Ardaiz, J. dissenting, "judicial notice of findings of fact does not mean that those findings of fact are true, but, rather, only means that those findings of fact were made") (citations omitted); Doyle v. People, 343 P.3d 961, 963 (Colo. S. Ct. 2015) ("Because the resolution of a factual matter at issue in a prior judicial proceeding, unlike the occurrence of the legal proceeding or other court action itself, does not become an indisputable fact within the contemplation of CRE 201 merely as a result of being reflected in a court record, the trial court erred in taking judicial notice that the defendant failed to appear in court on a particular day"); see also GRAHAM, *supra* note 15 § 201:3 for a full discussion of judicial notice of court records.

[30] Minn. Bd. of Jud. Standards Advisory Op. 2016-2 (2016) *citing In re* Welfare of D.J.N., 568 N.W.2d 170, 175 (Minn. Ct. App. 1997).

[31] Wash. Ethics Advisory Comm. Op. 13-07 (2013) ("a judicial officer in a juvenile matter may not *sua sponte* review public and/or sealed records [maintained by the courts] unless such review is authorized by law"; "[i]f a party to a proceeding requests the court to review [the records] but such review is not expressly allowed by law, then the court should allow the other party or parties to be heard").

### IV.     Conclusion

The Internet provides useful tools for discovering vast amounts of information.  Searching reliable sources on the Internet may reveal information that educates, informs, and enlightens the judiciary, not unlike judicial seminars and printed materials.

Information properly subject to judicial notice is well within the judge's discretion to search and use according to the applicable law.  On the other hand, adjudicative facts that are needed to determine an issue in a case, but which are not properly subject to judicial notice, may not be researched without violating Rule 2.9(C).  Stated simply, a judge should not gather adjudicative facts from any source on the Internet unless the information is subject to proper judicial notice.  Further, and within the guidelines set forth in this opinion, judges should not use the Internet for independent fact-gathering related to a pending or impending matter where the parties can easily be asked to research or provide the information. The same is true of the activities or characteristics of the litigants or other participants in the matter.

**AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY**

321 N. Clark Street, Chicago, Illinois 60654-4714 Telephone (312) 988-5328
CHAIR: Barbara S. Gillers, New York, NY ■ John M. Barkett, Miami, FL ■ Wendy Wen Yun Chang, Los Angeles, CA ■ Hon. Daniel J. Crothers, Bismarck, ND ■ Keith R. Fisher, Arlington, VA ■ Douglas R. Richmond, Chicago, IL ■ Michael H. Rubin, Baton Rouge, LA ■ Lynda Shely, Scottsdale, AZ, ■ Elizabeth C. Tarbert, Tallahassee, FL. ■ Allison Wood, Chicago, IL

**CENTER FOR PROFESSIONAL RESPONSIBILITY:** Dennis A. Rendleman, Ethics Counsel; Mary McDermott, Associate Ethics Counsel

**©2017 by the American Bar Association. All rights reserved.**